O'Connell, Chairman of Board of Election Com'rs, et al. v. Duff et al.

Feb. 14, 1939.

HUBERT MEREDITH, Attorney General, and WM. HAYES, Assistant Attorney General, for appellants.

JOHN J. WINN and W. B. WHITE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

The appellee, C. E. Duff, individually, and as a Democrat and taxpayer in Montgomery county, Kentucky, filed this action in the Franklin circuit court against the members of the state board of election commissioners, and J. F. Reynolds, Sr.—the appointee of the board as Democratic Election Commissioner for Montgomery county—wherein he sought enforcement orders against defendants, requiring them to rescind their action in appointing Reynolds as Democratic Election Commissioner of Montgomery County, and to appoint one of the five names on a list furnished the state board by the county party committee from which to select a Democratic Commissioner for the county. In the absence of the regular judge of the Franklin Circuit Court, Hon. C. C. Marshall, Judge of the Twelfth Judicial District in the Commonwealth, was selected as special judge to try the case, and at the hearing he sustained the prayer of the petition and granted the mandatory orders prayed for—to reverse which judgment defendants prosecute this appeal.

The undisputed and admitted facts are: That the state board met in Frankfort on August 2, 1938, at which time the county executive committee of the Democratic party in Montgomery county had filed no list of (five) names from which to select a Democratic election commissioner for the county with the state board, and in the absence of such a list it appointed Reynolds, who

qualified and was proceeding to act as such county election commissioner when this action was filed to prevent him from doing so. The petition alleged the foregoing facts and further averred that on August 3, 1938—the next day after the state board of election commissioners had appointed Reynolds—the Democratic county committee of Montgomery county met and made a list of five names as eligible for the position of Democratic county election Commissioner, which list was furnished and delivered to the state board of election commissioners on August 4 of that year. It also further alleged that the state board of election commissioners in years preceding 1938 had customarily met for the purpose of appointing county election commissioners in the latter part of August in each year, and that, acting upon the theory that such practice would not be departed from, the Democratic Executive Committee of Montgomery County—in holding its meeting on August 3rd, and in selecting its list of five eligible persons for the involved position—acted within time, and that it was the duty of the state board of election commissioners to (a) postpone its selection of county election commissioners to a later date in August than the second day of that month when it acted in the instant case, or (b) that, notwithstanding it had so acted on the earlier date, it was its duty after receiving the list of Democratic eligibles from the party committee of Montgomery County to meet and rescind its action taken on August 2, and to make a selection from the list furnished as indicated, all of which the court in its judgment appealed from sustained.

It, at once, will be perceived that the only question involved is the proper interpretation of Section 1596a-2 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, in which provision is made for the appointment of county commissioners by the state board of election commissioners, for each dominant political party, with the sheriff of the county constituting the third member by virtue of his office. The pertinent parts of that section say: "The two members of said county board of commissioners shall be appointed one each from five names designated in writing, if any are so designated, by each of the county executive committees of the two political parties," etc. Also, "Said appointment by the state board shall be made annually in the month of August." Those two excerpts contain all of the statutory

direction pertaining to the question in hand, and leave no room for any other interpretation than that the state board of election commissioners may make appointments of county boards of election commissioners at any time throughout the month of August in each year to serve for the ensuing year for their respective counties, and that its appointees shall be made from a list of five names furnished by the respective party executive committees of the counties "if any are so designated." It is equally clear—with no room for controversy—that the designation of the five names which the party executive committees of the respective counties may make to the state board, must be done and the designation filed with that board before it attempts to act in the premises within the time when under the law it may act. If its meeting is held within that time, and the party committees of the respective counties have not up to that time filed with it the prescribed list of eligibles for the places then the state board may appoint any qualified person of its own selection.

There is no foundation for any other interpretation to be given the language of the statute, and which eliminates the application of the doctrine of contemporaneous construction relied on by counsel for plaintiff under a pleaded customary course of conduct by defendants as members of the state board of election commissioners. In every case cited by counsel for plaintiffs in support of the alleged custom forming the contemporaneous construction contended for, the opinion is careful to state that the doctrine of customary interpretation—which is but another name for contemporaneous construction—is never available, howsoever long a period it may cover, unless the language of the statute or other writing to be construed is confusing in its terms and more or less ambiguous, thereby furnishing room for more than one interpretation. In such cases parties to the instrument, or officials whose duty it is to administer the statute, may by their course of action adopt and follow an interpretation, which, if done and rights have become adjusted to that interpretation, will be upheld by the courts under the rule that has become known in the law as "contemporaneous construction." The terms of the statute here involved—as will be seen by the excerpts supra—are wholly free from any such confusing or ambiguous element, and which renders the doctrine contended for entirely inapplicable. Some of the cases

relied on by counsel for plaintiff as supporting the right to invoke the doctrine are Sewell v. Bennett, 187 Ky. 626, 220 S. W. 517; Russell v. Rhea, 269 Ky. 138, 106 S. W. (2d) 148; Murray v. Gill, 269 Ky. 207, 106 S. W. (2d) 634; Howard v. Stevenson, 269 Ky. 491, 107 S. W. (2d) 304, and others cited in those opinions, each and all of which emphasized the limitations of the application of the doctrine as above outlined. Without them and to administer the doctrine in their absence—which is the effect of counsels' argument—would be nothing less than to permit customary action or contemporaneous construction to repeal or modify plainly written statutes, or contracts, and thus transfer legislative authority upon those who make and apply their unfounded interpretation, but which may not be done.

Clearly, the language of the statute supra intends for the county party committees to furnish their respective lists before the time arrives for the state board of election commissioners to act, and in the absence of such furnished list, when the state board does act, on any day of the permitted and limited period for such action, it may fill the places of county election commissioners by qualified persons of its own selection, and which was done in this case in the appointment of Reynolds.

If authority was needed in support of the interpretation we have made the case of Swinford v. Chasteen, 261 Ky. 249, 87 S. W. (2d) 373, is in point. That case involved the employment of a teacher or teachers in some of the common school districts in Rockcastle county. The subdistrict trustee made no recommendation for teachers between February 1 and April 1, of the year involved—after which latter date the county board of education could select teachers. The involved teachers in that case were selected upon recommendation of the county school superintendent, which was made by him after April 1 of the year involved; but before his recommendee was selected the subdistrict trustee made a recommendation. His recommendation, however, was ignored by the county board of education and the recommendee of the county school superintendent was selected. We sustained the action of the board upon the ground that the subdistrict trustee could not make a recommendation of a teacher of his school district after the arrival of the time provided by statute when the county board of education might employ teachers, and the opinion went so far as to hold that a later recom-

mendation by the subdistrict trustee would be unavailable, although at the time he made such belated recommendation no teacher had been employed, or even recommended by the county school superintendent. However, the latter question need not be and is not decided in this case, since the facts do not present it. The interpretation of the various provisions of the school law in that case sustains the principle which we have applied with reference to the election statute involved in this one. All the facts hereinbefore set out appeared in the petition to which defendants demurred. Their demurrer was overruled and they declined to plead further and the judgment appealed from sustaining the prayer of the petition was rendered. It is our conclusion that the court erred in overruling the demurrer to the petition and that, on the contrary, he should have sustained it for the reasons hereinbefore set out.

Wherefore, the judgment is reversed, with directions to set it aside and to sustain defendant's demurrer filed to the petition, and for further proceedings consistent with this opinion, the whole Court sitting.