CLARENCE P. KIDDER *vs.* MAYOR OF CAMBRIDGE & others.

JOSEPH J. CABRAL & others *vs.* MAYOR OF CAMBRIDGE & another.

Middlesex.     October 3, 1939. — December 8, 1939.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Election Commissioners. Public Officer. Constitutional Law*, Appointment of civil officers. *Cambridge. Political Committee. Words*, "Whole membership."

St. 1939, c. 43, is not invalid as "unworkable"; and the limitations thereby placed upon the mayor's power to appoint election commissioners of Cambridge were within the powers of the General Court under c. 1, § 1, art. 4 of the Constitution respecting "naming and settling . . . civil officers," and were not unreasonable.

The "whole membership of" a political party's city committee in Cambridge within St. 1939, c. 43, should be determined as it exists at the time of action by the committee under the statute, diminished by deaths and resignations of members originally chosen.

If acceptance of the resignation of a member of a political party's city
committee was necessary for determination of legality of committee ac-
tion, it could be inferred from tacit acquiescence of the committee in
the absence of specific action.

TWO PETITIONS for writs of mandamus, filed in the Supreme
Judicial Court for the county of Middlesex on June 2, 1939.

The cases were reported, without decision, by *Dolan, J.*,
and were submitted to the full court on briefs.

*Haven Parker & D. T. Gallup*, for the petitioners.

*R. C. Evarts*, City Solicitor, for the respondents.

DOLAN, J.    These are two petitions in each of which a
writ of mandamus is sought.    The cases were heard to-
gether by a single justice of this court who, without deci-
sion, reported them upon the petitions, answers and state-
ment of agreed facts for the determination of the full court.
The cases therefore come before us on the report as cases
stated.    G. L. (Ter. Ed.) c. 231, § 126.

In the first case, Clarence P. Kidder is the sole petitioner,
and the respondents are the mayor of Cambridge, three
duly appointed and qualified election commissioners of that
city, and Benjamin F. Wyeth.    The petitioner seeks the
issuance of the writ to compel the mayor and the three
duly qualified election commissioners to recognize him as
an election commissioner of the city until such time as his
successor is appointed in accordance with the provisions of
St. 1939, c. 43, and to restrain the respondent Wyeth from
assuming to act as such a commissioner.

In the second case, the nine petitioners (of whom the
petitioner in the first case is one) are duly qualified Repub-
lican voters of the city of Cambridge; with one exception
they are members of the Republican city committee of that
city.    They bring the petition in their own rights as citizens
and Republican voters.    Some of them were duly author-
ized thereto on behalf of the Republican city committee.
The respondents are the mayor and Wyeth, who are also
among the respondents in the first case.    The relief prayed
for is that the writ issue to require the mayor to appoint
as an election commissioner, in place of Kidder whose term
has expired, one person from a list of three submitted to

the mayor by the committee under the provisions of St. 1939, c. 43, and to require Wyeth to refrain from assuming to act as an election commissioner.

It is agreed that, in addition to facts set forth in the statement of agreed facts, those admitted by the pleadings may be taken as true. Material facts are these: The board of election commissioners of the city of Cambridge was established by St. 1921, c. 239. This statute was amended by St. 1939, c. 43. As amended, pertinent provisions are that, as the term of any of the commissioners expires, the mayor shall appoint his successor without need of confirmation by a city council, so that as equally as may be the members of the board shall represent the two leading political parties, and that in no case shall an appointment be made so as to cause the board to have more than two members of the same political party. It is further provided that "Every such appointment shall be made from a list to be submitted to him [the mayor] by the city committee of the political party from the members of which the position is to be filled, containing the names of three enrolled members of such party resident in said city, selected by vote of a majority of the whole membership of such committee; and every member of said board shall serve until the expiration of his term and until his successor has qualified." Kidder was appointed an election commissioner in 1935 and his term expired May 1, 1939. At that time the board consisted of two Democrats and two Republicans, Kidder being one of the latter. Thus the two leading political parties of the city had equal representation on the board, as required by the statute.

In April, 1939, a meeting of the members of the Republican city committee was called for May 4, 1939, for the purpose of selecting three candidates whose names should be submitted to the mayor for the appointment of one of them as election commissioner as provided in St. 1939, c. 43. On May 1, 1939, the mayor assumed to appoint the respondent Wyeth, an enrolled Republican, as election commissioner in place of Kidder, whose term had then expired. A meeting of the Republican city committee was held on

May 4, and the chairman announced that the number of votes necessary to constitute a majority of its whole membership was eighty-eight. Kidder and the petitioners (in the second case) Cazmay and Skinner were selected by votes of ninety-three to one, ninety-two to two and ninety-one to three, respectively, to constitute the list of three persons to be submitted to the mayor. On May 6 the mayor received the list of these three names, described as having been selected by a majority of the whole membership of the committee and submitted, in compliance with St. 1939, c. 43, in order that, in accordance therewith, the mayor should make an appointment to the election commission from the list. No person thus selected has been appointed by the mayor, and no other names have been submitted to him by the committee. In these circumstances it follows that, if the governing statute is constitutional, Kidder is still an election commissioner and entitled to be recognized as such until a successor to him has qualified.

The respondents contend that the statute is unconstitutional and invalid, arguing that it is "plainly unworkable" and that this fact was recognized by the Legislature, since a few months after the enactment of St. 1939, c. 43, its provisions were amended by St. 1939, c. 432, so that, instead of a vote of a majority of the whole membership being required to select possible appointees, only a majority vote of those members present and voting at a meeting, provided that no less than thirty such members are present and voting, is now required. We think that the amendment of a statute does not constitute in itself any sound ground for the contention that the statute which is amended was unconstitutional, and also that mere difficulty or inconvenience in carrying out its terms does not render it invalid. If the meaning of a statute is clear, its inconvenience cannot be considered by the courts. *Madden's Case,* 222 Mass. 487.

The respondents further contend that St. 1939, c. 43, imposes unreasonable and invalid limitations upon the mayor's power of appointment, arguing that, by requiring

a majority vote of the whole membership of the committee instead of the more usual majority vote of a quorum, it becomes entirely possible that on some occasions the vote required cannot be obtained. They contend that no such vote of the committee was obtained at its meeting on May 4, and further argue that, since in such situation there would be no available list from which the mayor could make an appointment under c. 43, he is thus deprived of all power to appoint a commissioner.

The Constitution of this Commonwealth, Part II, c. 1, § 1, art. 4, empowers the General Court "to name and settle annually, or provide by fixed laws, for the naming and settling all civil officers within the said commonwealth; the election and constitution of whom are not hereafter in this form of government otherwise provided for." The members of the board of election commissioners of the city of Cambridge are civil officers. See *Opinion of the Justices,* 303 Mass. 615, 620–622, and cases cited. Their offices were created by St. 1921, c. 239. It follows that the Legislature could determine the manner of selecting such officers, and that it was within its power to alter the method of appointment. *Taft* v. *Adams,* 3 Gray, 126, 130, 131. *Barnes* v. *Mayor of Chicopee,* 213 Mass. 1, 4. See also *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 302–303. Although the Legislature could not impose unreasonable limitations, inconsistent with the nature of our government, upon the power of appointment, *Brown* v. *Russell,* 166 Mass. 14, 25, we think it cannot be said that a requirement of a vote of a majority of the whole membership of the committee is an unreasonable limitation upon the power of appointment. It would seem to be established by *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 164–170, that its provision for appointment by the mayor from a list to be submitted by the committee is not an unreasonable limitation upon his power to appoint. This is conceded by the respondents.

We are of opinion that, since under c. 43 a member of the election commission of the city involved is to retain his office until his successor is qualified, and since no suc-

cessor has been appointed to succeed Kidder by the mayor in the manner provided by the statute, which the mayor is bound to observe, Kidder has not ceased to be one of the election commissioners, but still occupies that position, and is entitled so to do until his successor is appointed and qualified in accordance with the provision of the governing statute. It follows that the action of the mayor in assuming to appoint the respondent Wyeth as an election commissioner was invalid and of no effect.

In the second case the respondents contend that no relief can be granted the petitioners because the nominees whose names were submitted to the mayor were not chosen by a majority of the whole membership of the committee.

A list of the membership of the city committee involved was filed by its secretary with the Secretary of the Commonwealth on April 12, 1939, in accordance with the provisions of G. L. (Ter. Ed.) c. 52, § 5, as amended by St. 1938, c. 346, § 1. The list contained the names of one hundred ninety-seven elected and appointed members of the committee. Prior to the meeting of May 4, three of the members originally chosen had died, nine had submitted their resignations from the ward committee of which they had been members and from the city committee by an instrument in writing, dated May 2, 1939, in which their resignations were expressed to take effect immediately, and six of the persons originally chosen as members had removed from the city. Prior to the meeting the chairman of the city committee was informed by the chairmen of the ward committees that four other members of ward committees also had resigned. We construe this to mean that these four members had resigned as members of the respective ward committees of which they had been members and by virtue thereof members of the city committee. At the meeting of the committee, only eighty-three members of the committee being present, it was voted to recess for fifteen minutes. When the meeting reconvened there were ninety-four members present. Prior to the recess the chairman of the committee had announced that the number of votes necessary to constitute a majority of the whole mem-

bership was eighty-eight.  It seems clear that in fixing this number he eliminated from consideration three persons who had died, thirteen who had resigned and six who had removed from the city, thus fixing the whole membership as one hundred seventy-five, of which, as announced at the meeting, a majority would be eighty-eight.  The persons whose names were submitted to the mayor under St. 1939, c. 43, received ninety-three, ninety-two and ninety-one votes respectively.

In their argument the petitioners assert that the number constituting the whole membership of the committee at the time of the meeting was one hundred seventy-nine. They reach this result by eliminating the three former members who had died, nine who had resigned and the six who had removed from the city.

The respondents contend that the "whole membership" of the committee must be determined to be the original number chosen with all vacancies filled as provided in G. L. (Ter. Ed.) c. 52, § 6, as amended by St. 1938, c. 346, § 1.

They also contend in the alternative that, if this is not so, the whole membership was reduced to one hundred ninety-four by the deaths of three members; and that, even if the resignations of the nine members who joined in the instrument of resignation before referred to were effective without acceptance, the whole membership would be one hundred eighty-five and that, since but one of the persons selected received ninety-three votes, the vote did not comply with the provisions of St. 1939, c. 43.  They make no reference in argument to the four resignations from ward committees of which the chairman of the city committee was informed by chairmen of ward committees.  They argue that, by the removal of six members from the city, their memberships in the city committee were not thereby terminated.  They properly concede that decisions to the effect that the resignations of public officers are not effective until accepted are not directly in point since membership in a committee of one political party or another does not constitute public office.  *Attorney General* v. *Drohan,* 169 Mass. 534.

We think that by "whole membership" as provided in St. 1939, c. 43, no more was intended than "whole membership" as it should be constituted at the time of the action taken by the city committee under that statute, and not "whole membership" as determined by the number of those originally chosen and certified to the office of the Secretary of the Commonwealth. We have been referred to no authorities that hold that, where the term "whole membership" or similar terms are used, deceased or resigned members must be counted in fixing the whole membership of a body. We think that the whole membership of the city committee involved must be held to have been diminished at least by the deaths and resignations of former members, sixteen in all, thus making the whole actual membership at the time of the vote in question one hundred eighty-one of which ninety-one constitute a majority.

The provisions of c. 52, § 6, as amended, that "A vacancy . . . in the membership of a ward or town committee shall be filled by such committee, and a statement of any such change shall be filed as in the case of the officers and members first chosen" (that is, as provided in § 5) cannot be properly construed, in the event of failure to fill vacancies, to have the effect of retaining in the "whole membership" of city or town committee persons originally chosen but who thereafter have died or resigned as members of "such committee." We are also of opinion that no such construction can be given to St. 1938, c. 346, § 3, which, so far as material to this discussion, provides that "The terms of office of members of each . . . city . . . committee in office on the effective date of this act . . . are hereby extended until the organization of the successor of such committee, whose members shall be elected at the presidential primaries to be held in the year nineteen hundred and forty." Obviously one who has deceased cannot be continued in office by any statutory provision, and we think that one who resigns must be held to cease to be a member of the committee. The written resignation from the ward committee and from the city committee, joined in by nine members thereof, was dated May 2, 1939, and was received by the secretary of

the city committee on May 4, 1939, prior to the meeting held on that day. We are of opinion that, if acceptance of these resignations was necessary (and we do not so decide), it may be inferred from the receipt and filing of the instrument of resignation, and from the acquiescence, of the members of the committee who attended the meeting, in the statement of the chairman of the number necessary to constitute a majority of the whole membership, which number excluded from consideration those who had resigned. We also think that the fact, that chairmen of ward committees informed the chairman of the city committee, prior to the meeting, that four members of ward committees had resigned, warrants an inference that their resignations had been accepted by their respective ward committees, to which they could properly resign since they derived membership in the city committee from the ward committees, which were empowered under G. L. (Ter. Ed.) c. 52, § 6, as amended, to fill vacancies therein.

Since thus by death and resignations the "whole membership" of the city committee at the time of the vote taken under St. 1939, c. 43, was reduced to the number of one hundred eighty-one, of which a majority would be ninety-one, and the persons selected to make up the list to be submitted to the mayor under the statute received ninety-three, ninety-two and ninety-one votes respectively, the list was properly selected, and it was the duty of the mayor to select and appoint from that list one of those named therein as an election commissioner in succession to Kidder, whose term of office had expired prior to the presentation of the list of nominees to the mayor, as provided by the statute. In view of this conclusion it is unnecessary to determine the status of those members of the city committee who had removed from the city. (But see *Barre* v. *Greenwich*, 1 Pick. 129, and *Williams* v. *School District in Lunenburg*, 21 Pick. 75.)

Accordingly, in the first case a peremptory writ of mandamus is to issue, commanding the respondent mayor and the respondents Noonan, Penniman and McDonald to recognize the petitioner Kidder as an election commissioner

of the city of Cambridge, and commanding the respondent Wyeth to desist and refrain from usurping in any form or manner the office of the petitioner Kidder as such election commissioner.

In the second case a peremptory writ of mandamus is to issue, commanding the respondent mayor to appoint forthwith, as election commissioner of the city of Cambridge, one of the three persons whose names are contained in the list submitted to him by the Republican city committee of that city in accordance with the provisions of St. 1939, c. 43, in succession to Clarence P. Kidder whose term of office as an election commissioner expired on May 1, 1939, but who continues to hold office "until his successor has qualified" as provided in St. 1939, c. 43.

*So ordered.*