THE STATE OF DELAWARE, Upon the relation of ALBERT W. JAMES, Attorney-General, Relator Below, Plaintiff in Error, v. SIGMUND SCHORR, LEROY F. HAWKE, JOHN F. NEWELL, THOMAS COOCH, LELAND WILDS, LEON H. RYON, WILLIAM K. PENNINGTON, JAMES E. BROWN, JAMES L. BROWN, JOHN W. FOREMAN and WALTER G. TATNALL, Respondents Below, Defendants in Error.

HARRINGTON, Chancellor, and TERRY, J., dissenting.

(*September* 1, 1948.)

HARRINGTON, Chancellor, RICHARDS, Chief Justice, TERRY, CAREY and LAYTON, J. J.

*Joseph A. L. Errigo* and *P. Warren Green* for Relator Below, Plaintiff in Error.

*Daniel F. Wolcott* and *James L. Latchum* for Respondents Below, Defendants in Error, Sigmund Schorr, Leroy F. Hawke, John F. Newell, Thomas Cooch and Leland Wilds.

*Henry A. Wise, Jr.,* for Respondents Below, Defendants in Error, Leon H. Ryon, William K. Pennington, James E. Brown, James L. Brown, John W. Foreman and Walter G. Tatnall.

RICHARDS, Chief Justice.

This Court is called upon to determine two questions, first, whether the subject of the Act is expressed in the title, and second, whether the Legislature can delegate the power of appointment as members of the Department of Elections for New Castle County to an agency which is not a part of the. State Government as outlined by the Constitution.

We will give our attention to the second question first.

Our National Constitution, ordained and established in order to form a more perfect union, establish justice, insure domestic tranquility, provide for the common defence, promote the general welfare and secure the blessings of liberty to ourslves and our posterity, imposed the sovereign power of government in

three separate and distinct branches, the legislative branch, the executive branch, and the judicial branch.

The Government of the United States, being one of enumerated powers, it is necessary to look to these different branches of government in order to determine what these powers are. Cooley's Constitutional Limitations, 8 Ed. Vol. 1, 11.

■ Our State Constitution, which like most state constitutions is patterned after the National Constitution, is not a grant of power but is a limitation upon the powers which the State inherently possesses. It therefore follows that the Legislature has an unlimited power to enact any laws that it may consider necessary, except where the National or State Constitutions have placed limitations upon it.

*Rice* v. *Foster,* 4 *Harr.* 479; *Collison* v. *State,* 9 *W. W. Harr.* 460, 468, 2 *A.* 2d 97, 119 *A.L.R.* 1422; *State ex rel. Morford v. Emerson,* 1 *Terry* 328, 345, 10 *A.* 2d 515; affirmed, 1 *Terry* 496, 14 *A.* 2d 378.

Following the pattern of the National Constitution, our State Constitution also confers the sovereign powers of government on three separate branches, the legislative branch, the executive branch and the judicial branch. The legislative power of the State is vested in the General Assembly consisting of the Senate and House of Representatives which is the law making body of the State. Constitution, Article 2.

The Supreme executive power of the State is vested in the Governor whose duty it is to see that the laws are faithfully executed. Constitution Article 3. His duties include the power of appointing to office, by and with a majority of all the members elected to the Senate, such officers as he is authorized by the constitution or by law to appoint. The Governor is the only officer provided for by the Constitution upon whom it confers the power of appointment.

The Judiciary Power of the State is vested in the various courts provided for by the Constitution and such other courts as the General Assembly, with the concurrence of two-thirds of the members to each House, shall from time to time by law establish.

It seems clear that the Constitution imposes all the powers of government, including the power to appoint to office, upon the three separate and independent branches of government above referred to. No recognition is made of any agency, association, commission or committee which is not included in one of these three branches of government or provided for thereby.

In the case of State ex rel. *Morford v. Emerson,* 1 *Terry* 233, 8 *A. 2d* 154, 158, the Court said, "We see nothing in the Constitution which prevents the Legislature from creating a statutory Commission or Board and naming the members thereof. If that were true, then we see no reason why an existing statutory Board may not be amended by increasing the membership, such new members being designated in the Amendatory Act."

But that is not what occurred in this case. The Legislature passed an Act amending the act providing for a Department of Elections for New Castle County, by increasing the membership from nine to eleven, five of whom are to be nominated by the State Chairman of one of the two leading political parties, five of whom are to be nominated by the State Chairman of the other of the two leading political parties, one of whom is to be nominated by the Governor and all of whom are to be appointed by the Governor.

The Governor has no discretion with respect to the five members who are nominated by the State Chairman of one of the two leading political parties, or the five members who are nominated by the State Chairman of the other of the two leading political parties, he is required to appoint the persons nominated by said State Chairman of the two leading political parties. By

this procedure the Legislature delegated to the State Chairman of the two leading political parties, which are not agencies of the State or connected with the State Government, the right to appoint ten members of the Department of Elections for New Castle County. The distinction between the Emerson case and the case before this Court is clear; in that case the Legislature, which is a branch of the State Government, named the members of the State Highway Department in the Act, in other words, they were appointed by the Legislature, while in the present case the Legislature delegated to the State Chairman of the two leading political parties, which are voluntary organizations of individuals, having no connection with the State Government, the power to appoint the members of a state agency.

We agree with the position taken by the Court in the Emerson case, that the Legislature can pass an act creating a state agency or board and name the members thereof in the act; and we are of the opinion, that the Legislature can authorize the State Highway Department which is a State Agency to make certain appointments, but the Legislature can not delegate to the State Chairman of a political party, which is a voluntary organization of individuals, accountable to no one except its own organization, having no connection with the three branches of government in which the sovereign power of government is lodged by the Constitution, the power to appoint the members of a state agency such as the Department of Elections for New Castle County. *Rice* v. *Foster,* 4 *Harr.* 479; *Rouse* v. *Thompson,* 228 *Ill.* 522, 81 *N.E.* 1109; *People ex rel. Shumway v. Bennett,* 29 *Mich.* 451, 18 *Am. Rep.* 107; *State ex inf. Hadley v. Washburn,* 167 *Mo.* 680, 67 *S.W.* 592, 90 *Am. St. Rep.* 430; *Ohio & M. Ry. Co. v. Todd,* 91 *Ky.* 175, 15 *S.W.* 56; *Winters v. Hughes,* 3 *Utah* 443, 24 *P.* 759.

In *Rice* v. *Foster, supra,* the Court used the following language:

"The sovereign power therefore, of this State, resides with the legislative, executive, and judicial departments. Having thus transferred the sovereign power, the people cannot resume or exercise any portion of it. To do so, would be an infraction of the constitution, and a dissolution of the government."

Chapter 60 of the Code of 1935, at paragraph 1810, section 1, defines a political party as "an organization of bona fide citizens and voters of any County in this State, which shall, by means of a convention, primary election or otherwise, nominate candidates for public offices to be filled by the people at any general or special election within the State."

If the candidates nominated by a political party as above defined are certified to the proper officer, placed upon the official ballot, and elected at the next general or special election, they become part of the State or County Government and may be classed as state or county officers; but that does not make the political party by which they were nominated a state agency or a part of the State Government to which the Legislature may delegate the power of appointing the members of a state agency. A political party adopts the method by which its organization is brought about, provides its own rules for its regulation and is accountable to no one except those who compose the party. It selects its State Chairman by the method or rules which it adopts, who is accountable to no one except the party and may be removed by it by any procedure that it considers proper to take.

There is a clear distinction between the activities of a political party in selecting candidates for public office and causing them to be elected, and the administration of the affairs of government by those who are elected or appointed to office. The following comment of *Chief Justice Bronson,* in *Oakley v. Aspinwall, 3 N. Y* 547, is very appropriate in this case:

"There is always some plausible reason for the latitudinarian

constructions which are resorted to for the purpose of acquiring power—some evil to be avoided or some good to be attained by pushing the powers of the government beyond their legitimate boundary. It is by yielding to such influences that constitutions are gradually undermined, and finally overthrown. * * * If the law does not work well, the people can amend it; and inconveniences can be borne long enough to await that process. But if the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal. One step taken by the legislature or the judiciary in enlarging the powers of the government, opens the door for another, which will be sure to follow; and so the process goes on, until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them."

We are aware of the fact that there are cases which take the contrary view, the most recent of which is *Driscoll v. Sakin,* 121 *N. J. L.* 225, 1 *A. 2d* 881, but we cannot agree with their position. The case of *Driscoll v. Sakin, supra,* depends almost entirely on *Nixon v. Condon,* 286 *U. S.* 73, 52 *S. Ct.* 484, 485, 76 *L. Ed.* 984, 88 *A. L. R.* 458, for support, but we cannot agree that it is an authority for the question before the Court in that case. In the Nixon case the Court was construing a Texas statute dealing with the right of a negro to vote at a Democratic party primary election and in the opinion Mr. Justice Cardozo used these words:

"Whether the effect of Texas legislation has been to work so complete a transformation of the concept of a political party as a voluntary association, we do not now decide. Nothing in this opinion is to be taken as carrying with it an intimation that the court is ready or unready to follow the petitioner so far. As to that, decision must be postponed until decision becomes necessary."

The following cases relied upon by the Defendants in Error are distinguishable from the case under consideration, because

in each of them the appointments are to be made from a list of names which allows the appointing power to exercise some discretion:

In *Bradley* v. *Board of Zoning Adjustment,* 255 *Mass.* 160, 150 *N. E.* 892, the Act provided for a board of zoning adjustment for the city of Boston, consisting of 12 members, to be appointed by the Mayor; one from a list of two to be nominated by the Chamber of Commerce, one from a list of two to be nominated by the Associated Industries of Massachusetts, and others from a list of two to be nominated by other organizations.

In *Commonwealth ex rel. District Attorney* v. *Gibson,* 316 *Pa.* 429, 175 *A.* 389, the Act provided that the County Commissioners should appoint each year 2 registrars for each election district in cities of the third class, said appointments to be made from the names of two suitable persons to be submitted by the party representatives of the two major political parties. If the names submitted were not satisfactory the County Commissioners could ask that other names be filed.

In *Kidder* v. *Mayor of Cambridge,* 304 *Mass.* 491, 24 *N. E.* 2d 151, the Act authorized the Mayor of Cambridge to appoint 3 Election Commissioners for the city, to represent as equally as possible the two leading political parties, said appointments to be made from a list of 3 names to be submitted by each political party.

In *State ex rel. Kauffman* v. *Brown,* 11 *Ohio St.* 289, 145 *N. E.* 329, the Ohio election law makes the Secretary of State Supervisor of Elections, and authorizes him to appoint Deputy Supervisors of Elections for each county, to be divided equally among the two leading political parties. Said appointments to be made from names submitted by the executive committee for each political party.

The question before the court was whether the recommenda-

tion was made by the proper executive Committee, two committees claiming to represent one of the parties. The basic question of the right of any committee to recommend was not raised.

In *O'Connell v. Duff,* 276 *Ky.* 782, 125 *S. W. 2d* 718, a Kentucky statute provided that the State Board of Election Commissioners should appoint election commissioners for each County but the appointments were to be made from a list of five names to be submitted by the County Executive Committee of the two leading political parties. The question before the Court was whether the list of five names filed by the County Executive Committee of the Democratic party for Montgomery County was filed in time.

In *State ex rel. Humker v. Hummel,* 143 *Ohio State* 604, 56 *N. E. 2d* 167, the Republican Executive Committee of Stark County, Ohio, recommended the relator to the Secretary of State for appointment as a member of the Board of Elections for Stark County. The Secretary of State ruled that the Republican Executive Committee of Stark County by which the recommendation was made was not the legally constituted committee and appointed someone who was not recommended by it as a member of the Board of Elections. The Court held that the Secretary of State had no authority to determine in an ex parte proceeding that the Board of Elections for Stark County was illegally constituted. The question of the recommendation by the County Executive Committee was not raised.

In *Russell v. Rhea,* 269 *Ky.* 138, 106 *S. W. 2d* 148, it was contended that the appointment of a member of the Board of Election Commissioners for Logan County was not made from the list of five submitted to the State Board of Election Commissioners as required by statute. The Court held that it was the duty of the State Board of Election Commissioners to make the appointments from the list submitted to them. It appears in this case that the appointments were to be made from a list of five names which gives

the State Board of Election Commissioners some discretion in making the appointments.

Our attention has been called to various paragraphs of the Code of 1935 which define a political party, a primary election, provide rules under which primary elections shall be held by political parties, require primary elections to be held by Board of Election officers, direct the appointment of the election officers by the County Committee of the political party holding the primary election, require the election officers to take an oath of office, clothe the election officers with the powers and duties of the County Constable, compel the use of the official books of registered voters at all primary elections, prescribe the times within which the polls at primary elections must be open, require the approval of the Department of Elections of the County for the date of primary elections, prescribe qualifications of electors to vote at any primary election, make it a misdemeanor to commit certain offenses in connection with primary elections, require the use at primary elections of ballot boxes provided by the Department of Elections, prescribe the manner of voting and tallying the vote at primary elections, fix the compensation of primary election officers and directing all primary election expenses to be paid by the County, requiring all candidates for elective office to be certified as such by the presiding officer and Secretary of the several party conventions or committees, authorizing the Chairman of the State, County, Hundred or District political organzations to fill vacancies caused by the death, etc., of a candidate before the printing of the ballots.

These are necessary regulations to avoid confusion in the holding of primary elections, to prevent disorder at primaries and to guarantee that the members of each political party shall have the privilege of selecting the people of their choice to be voted for at the General Election for public officers. They cannot be construed to connect political parties with the State Government, or

to make the Chairman of the State Committee of political parties or other party officers public officials.

The appointment of local registration officers by the Board of Registration, for the respective Registration Department Districts, as provided for in Chapter 121 of Volume 43, Laws of Delaware, is not a parallel case. Each Board of Registration is required to appoint three capable persons, as local registration officers, for each election district, of each representative district, in its respective registration department district, the total number of registration officers in each representative district to be divided as equally as possible between the two leading political parties. The Executive Committee of each leading political party is required to furnish the Board of Registration with a list of three names for each appointment accredited to it from which the Board of Registration must make its appointments. The Board of Registration is not required to appoint one particular person nominated by the Executive Committee of the leading political parties, but may exercise its discretion by selecting one from three names submitted by said Executive Committees. By this method the Board of Registration makes the appointment by selecting one from the list of three names submitted.

In *State ex rel. Saulsbury v. Lewis,* 5 *Boyce* 213, 91 *A.* 993, the question before the Court was whether the Executive Committee of the Democratic Party of the City of Wilmington had furnished the Department of Elections with a proper list of names from which the registration officers accredited to it were to be appointed. The Court held that the Department of Elections was required to appoint the registration officers from the list furnished by the Executive Committee, if said list was in proper form and complied with the law. The case is also distinguishable from the present case because the Department of Elections was not required to appoint one certain person named by the Evecutive Committee of the Democratic party but had a list of names from which

to select the person to be appointed. The question for determination in this case was not passed upon.

Also, in the case of *State ex rel. McKelvey* v. *Townsend, 7 Boyce 19, 102 A.* 184, the question before the Court was whether the Governor had complied with the law in the appointment of registration officers, particularly with respect to the appointment of registrars for each registration district. The Court held that the Governor had performed his duties in compliance with the statute and that a more equal division of the registration officers could not have been made in each representative district. It expressly stated that no opinion was expressed on any other question raised in the case.

The Legislature had passed a number of acts providing for boards of different character, such as the Board of Medical Examiners, the Board of Dental Examiners and the State Board of Examiners of Graduate Nurses, to be appointed by the Governor from lists submitted to him but in none of these cases is he required to accept the name of one person for each appointment but may use his discretion in making them. As to the two Boards of Medical Examiners, they are to be appointed from the Lists submitted to the Governor by the two Medical Societies and there is no limit to the number of persons that can be named in the Lists. The State Board of Dental Examiners are appointed by the Governor from recommendations made by the Executive Council of the Delaware State Dental Society, and there is no limit to the number of persons that may be recommended. One member of the State Board of Examiners of Graduate Nurses is appointed by the Governor each year from a list of five names submitted to him by the Delaware Association of Graduate Nurses, and he may request an additional list, if he is not satisfied with the one furnished. There are a number of other statutes in this State providing for Boards of various character, the members of which are to be appointed by the Governor from recommendations

made by some association or organization which is not a part of the State Government, but we have not found any like the statute providing for the Department of Elections for New Castle County, which leaves the Governor no discretion and requires him to accept the nomination of one person by the State Chairman of the two leading political parties.

Section 4 of the Act provides that, "all members of the Department of Elections and all employees thereof prior to the effective date of this Act, shall continue to be members and employees thereof, respectively, until the members of the Department of Elections as appointed under Section 3 hereof shall be appointed and qualified and shall have organized as such."

It clearly appears that the Legislature by amending Chapter 57 of the Code of 1935, as amended, and providing for a Department of Elections for New Castle County, intended to do away with the Department of Elections for New Castle County, consisting of nine members, which existed at that time, and create a Department of Elections for New Castle County consisting of eleven members. The method adopted by the Legislature for this purpose having been found to be unconstitutional, the Legislature failed to carry out its intention to provide a Department of Elections for New Castle County consisting of eleven members, and the Department of Elections for New Castle County consisting of nine members is the legally constituted Department of Elections for New Castle County.

██ The eleven members of the Department of Elections for New Castle County which the Act that became effective on April 15, 1947, intended to create, were nominated and appointed as provided by said Act, qualified and organized the department. They then performed certain routine duties in connection with the office. While serving in this capacity they were de facto officers and acts performed by them while so serving are legal. A de facto officer has been defined as "one whose title is not good

in law, but who is in fact in unobstructive possession of an office, and is discharging its duties in full view of the public in such manner and under such circumstances as not to present the appearance of being an intruder or ursuper." 43 American Jurisprudence, page 225, sec. 471.

It was also argued that the Act in question violates section 16 of article 2 of the Constitution which requires that no Act shall contain more than one subject which shall be expressed in the title. This question has been passed upon by the Court of this State in a number of cases and very little can be added to what has already been said, as each act must be considered separately.

Having found the Act unconstitutional on other grounds it is not necessary to decide this question.

For the reasons above given, we are of the opinion that the Act in question is unconstitutional and the decision of the Superior Court is hereby reversed.

HARRINGTON, Chancellor, and TERRY, Judge, dissented.

HARRINGTON, Chancellor, delivering the dissenting opinion:

By Chapter 182, Volume 46 Laws of Delaware, the legislature created a Department of Elections for New Castle County of eleven members, five of whom were to be nominated by the State Chairman of each of the major political parties and the remaining members by the Governor. The Act also provides that "All of the members so nominated shall be appointed by the Governor as members of the Department of Elections. There shall never be more than six members of any one political party or faith." Certain qualifications for the office are, also, required. The majority of the court are of the opinion that the mode of appointment to the offices created is an indivisible provision and violates the general scheme of the State Constitution. We are unable to

agree with the latter conclusion. They, necessarily, concede that the legislative power of the General Assembly "is as broad and ample in its omnipotence as sovereignty itself, except insofar as it may be curtailed by Constitutional restrictions express or necessarily implied." *Collison v. State*, 9 *W. W. Harr.* (39 *Del.*) 460, 468, 2*A.* 2*d* 97, 119 *A. L. R.* 1422; *State ex rel. Morford v. Emerson*, 1 *Terry* 328, 345, 10 *A.* 2*d* 515; affirmed by this court, 1 *Terry* 496, 14 *A.* 2*d* 378. In other words, the majority concede that the State Constitution is not a grant of power and that the legislature, as the representative of the people, has all of the legislative rights and powers that are not expressly or impliedly taken away by that instrument or given to Congress by the Federal Constitution. id. The legislature could, therefore, have named the officers in the Act creating the offices had it chosen to appoint them in that manner. *State ex rel. Morford v. Emerson*, 1 *Terry* 233, 8 *A.* 2*d* 154. In that case, the court said: "We see nothing in the Constitution which prevents the legislature from creating a statutory commission or board and naming the members thereof." But the legislature could have adopted other methods of selecting statutory officers. See *Sinking Fund Com'rs v. George*, 104 *Ky.* 260, 47 *S. W.* 779, 84 *Am. St. Rep.* 454. The creation of the offices, the qualifications of the officers and the mode of their appointment were all legislative powers. The majority of the court, also, at least tacitly concede that there is no constitutional provision which prohibits the legislature from delegating the power to appoint persons to fill statutory offices to a certain class of agents. They say, however, that because of the division of governmental powers into legislative, executive and judicial, the limitation must be implied that the appointive agents selected should have some reasonable connection with some branch of the State government.

They, also, say that a political party is a mere voluntary organization, the chairman of which is "accountable to no one except its own organization." But all legislative Acts are presumed to

be valid and can only be declared void when clearly in violation of some restriction in the constitution. We can find no such express or implied limitation in that instrument and are forced to the conclusion that the provision in Chapter 182, Volume 46 Laws of Delaware for the selection of persons to fill the offices provided for in that Act, is valid. *Driscoll v. Sakin*. 121 *N. J. L.* 22, 1 *A. 2d* 881, approved by a majority of the court on opinion below, 122 *N. J. L.* 414, 5 *A. 2d* 699, 866; *Bradley* v. *Board of Zoning Adjustment*, 255 *Mass.* 160, 150 N. E. 892; Commonwealth ex rel. *District Attorney* v. *Gibson*, 316 *Pa.* 429, 175 *A.* 389; *Overshiner* v. *State*, 156 *Ind.* 187, 59 *N.E.* 468, 51 *L.R.A.* 748, 83 *Am.St.Rep.* 187; *Scholle v. State*, 90 *Md.* 729, 46 *A.* 326, 50 *L.R.A.* 411; *In re Bulger*, 45 *Cal.* 553; 42 *Amer. Jur. Public Officers, Paragraph* 92; 29 *C.J.S., Elections,* § 60, *Pages* 80-84; *Throop on Pub. Owcers, Paragraph* 85; see, also, *State ex rel Butts v. Marion Circuit Court, Ind. Sup.* 1947, 72 *N. E. 2d* 225.

*Driscoll v. Sakin, supra,* involved a strikingly similar statutory provision. The court, in sustaining the constitutionality of the Act, said [121 N.J.L. 225, 1 A.2d 882] :

"It * * * seems settled that where the Constitution of this State is silent the legislature may determine the manner in which a public official may be named, and may delegate the selection to others and that the Executive may be clothed with no discretion in the issuance of the commission. Nor do we see any encroachment upon the authority of the executive. The executive never had a constitutional power to appoint members of County Boards of Election. The County Boards were created by the legislature which provided in plain words the manner of their selection."

That seems to be the controlling principle of the case, though, in commenting on the reasonableness of the legislative policy and the functions of political parties, the Court had previously said:

"The act creating the office (of County Board of Election) provides for the nomination by the state chairman of the two most

powerful political parties of two of the members of the board. To insure a democratic form of government, it is necessary that there be at least two strong political parties holding different views upon political questions. Only as a result of public discussion can a wise policy be adopted. To insure honest elections it is essential that the county board be made up at least by the choice of both powerful political parties. The executive committees of political parties in this country act in matters of high public interest, and so great is their power that they are subject to constitutional restraint and hence may not act as local organizations may. *Nixon v. Condon,* 286 *U. S.* 73, 52 *S. Ct.* 484, 76 *L. Ed.* 984, 88 *A. L. R.* 458."

In *Overshiner* v. *State, supra,* the appellant had been convicted of practising dentistry without a license, in violation of a statute. The Court sustained the validity of the provision for the selection of a Board of Examiners of five reputable practising dentists, one of whom was to be appointed by the Governor, one by the State Board of Health, and three by the Indiana State Dental Association. The constitutionality of the Act was the only question before the court. It was contended that the legislature could not confer the power of appointment upon a private corporation or individual outside the executive department. The courts pointed out that [156 Ind. 187, 59 N. E. 469]

"where the constitution is silent, and the question is one of public policy, or relates to the best means or agency for the attainment of some governmental end, it must be presumed that the framers of the constitution intended to invest the legislative body with a large discretion in the selection of the agencies most suitable and beneficial to the public."

The latest pronouncement of the Indiana Supreme Court seems to be in accord with this case. See *State ex rel. Buttz v. Marion Circuit Court, supra.*

Our conclusion is, therefore, that when not restricted by the

constitution, the legislature may usually provide for the exercise of the appointing power by any department of the government, or by any person or association of persons whom it may choose to designate for that purpose. Statutory provisions, involving the application of these principles, are not unknown in this State.

An Act, relating to the registration of voters (*Vol.* 43, *Laws of Del., Chapt.* 121) provides:

"* * * that the total number of registration officers in each representative district shall be divided as equally as possible between the two leading political parties, as the same shall be determined upon by the said respective Boards of Registration at the time of making the appointments. And further, for each appointment accredited to any political party under this Section, the Executive Committee of such political party in the particular Registration Department District shall furnish the Board of Registration of said Registration Department District, on or before the first day of June of the year in which said appointment is to be made, a list of three names of properly qualified persons, from which list the said Board of Registration shall make its appointments."

The Boards of Medical Examiners are created by statute and the Governor is directed to appoint from lists of members submitted by the Medical Societies. *Revised Code,* 1935 *Paragraph* 918. Members of the State Board of Pharmacy, likewise a statutory board, are, also, appointed each year by the Governor from a list of five names submitted by the Delaware Pharmaceutical Society. *Rev.Code,* 1935, *Paragraph* 936. Similar methods are provided in the appointment of the State Board of Examiners of Graduate Nurses. *Rev. Code, Paragraph* 957, as amended by *Volume* 44, *Laws of Del.* 299; and in the appointment of the State Board of Dental Examiners. *Rev. Code, Paragraph* 967. The charter of the University of Delaware provides for the appointment of a specified number of trustees by the Govrenor and

for the election of a designated number by the Board. It, also, provides that the Governor, the President of the Universitty, the President of the State Board of Education and the Master of the State Grange shall be ex officio members. *Rev.Code, 1935, Paragraph 2776.*

In this state, candidates for elective offices in general elections must be persons certified as such "by the Presiding Officer and Secretary of the several State Party Conventions or Committees." *Vol. 44, Laws of Del., Chap.* 119. In case of the death, removal or resignation of such a candidate after the printing of ballots before an election, the "Chairman of the State, County, Hundred or District Political Organization, by which such candidate was nominated" is authorized "to fill such vacancy." *Rev.Code, 1935, paragraph 1815. Section 1782 of the Revised Code 1935,* also, prescribes the qualifications of electors to vote at any primary election. It is unnecessary, however, to determine whether political parties, or their officers, can be regarded, in any sense, as state agencies. They exercise some public functions in the nomination of candidates for public offices and, in a broad sense, are sometimes said to come within that class. See *State, ex rel. Buttz v. Marion Circuit Court, supra; Nixon v. Condon,* 286 *U.S.* 73, 52 *S.Ct.* 484, 76 *L.Ed.* 984, 88 *A.L.R.* 458. But that is not the controlling factor in this case.

The majority opinion, also, attacks the Act on the ground that the Governor was given no discretion in appointing ten of the members of the Department of Elections for New Castle County. But we are considering appointments of statutory officers where the Governor has only such power as the legislature, in its discretion, may give him. See *State ex rel. Morford v. Emerson, supra; Driscoll v. Sakin, supra.*

Section 9, Article III of the Constitution of 1897 provides:
"He (the Governor) shall have power, unless herein otherwise provided, to appoint, by and with the consent of a majority

of all the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint."

That provision is, therefore, a grant of power only to the extent that it is specifically given by the Constitution or by statute, *State ex rel. Morford v. Emerson, supra;* and the legislature provided in plain words the manner of the selection of ten members of the department. *Driscoll v. Sakin, supra.* The fact that the Governor was directed to commission the officers appointed in accordance with the provisions of the Act is of no material significance. *Driscoll v. Sakin, supra.*

As the important question is whether the Constitution prohibits the delegation of the legislative power to appoint statutory officers to persons not members of the State government, we are unable to see how any of the cases relied on by the minority of this Court can be distinguished on the ground that the named agents were only required to appoint from a list of names furnished by each of the major political parties. The number that could be named from any one political party was, also, limited.

Furthermore, in *State ex rel. Saulsbury v. Lewis,* 5 *Boyce* 213, 91 *A.* 993, the court sustained and enforced an Act (*Chapt.* 40, *Vol.* 21, *Laws of Del.*) which required the Department of Elections of the City of Wilmington to appoint election officers from a larger list of qualified persons submitted by the city executive committee of one of the two leading political parties.

*Rice v. Foster,* 4 *Harr.* 479, cited by the majority, involved a very different question. There, the court held that the legislature, without express constitutional authority, could not refer to the vote of the people the determination of whether the sale of liquor should be prohibited in the various counties of the State. The decision was based on the theory that the power to legislate, conferred on one government body, could not be delegated by it. See *Dangel et al, v. Williams et al.,* 11 *Del. Ch.* 213, 99 *A.* 84.

Substantially the same question was involved in most of the cases cited in the majority opinion.

The relator, also, claims: (1) That the Act in controversy establishes a political test for members of the Department of Elections for New Castle County and thereby violates Article XIV of the Delaware Constitution and the "equal protection" clause of the Fourteenth Amendment to the Federal Constitution; (2) that its provisions are adverse to a republican form of government; and (3) that the title of the Act does not comply with Article 11, Section 16 of the Delaware Constitution. The court below fully considered and rejected all of these contentions and we are in accord with its conclusion.

Our conclusion is, therefore, that the Act in question is valid, and that the eleven member Department of Elections is the legally constituted Department.

## On Reargument

Reargument granted on the question of whether the opinion of the majority of the Court declaring Section 3 of Chapter 182, of Volumn 46, of the Laws of Delaware, unconstitutional, rendered the repealing clause in Section 3 of said Act inoperative, or whether the Department of Elections for New Castle County consisting of nine members as provided for by *Paragraph 1746, Section 2, Chapter 57 of the Revised Code of 1935,* as amended, was still in existence.

RICHARDS, Chief Justice.

The facts of this case fully appear in the opinion handed down by the majority of the Court on September 16, 1948, and it is unnecessary to restate them here.

We must, however, again call attention to Section 3 of Chapter 182, Volume 46 of the Laws of Delaware, which reads,

*"Section 3. That 1746. Sec. 2. Chapter 57 of the Revised*

*Code of Delaware,* 1935, *as amended, be and the same is hereby repealed, and a new Section submitted in lieu thereof to be known as* 1746. *Sec. 2 as follows:*

"1746. Sec. 2. There shall be appointed eleven members of the Department of Elections for New Castle County, on the fifteenth day of April, 1947, and every four years thereafter on the fifteenth day of April five members of which are to be nominated by the State Chairman of one of the two leading political parties; five members of which are to be nominated by the State Chairman of the other of the two leading political parties; and one member of which is to be nominated by the Governor. All of the members so nominated shall be appointed by the Governor as members of the Department of Elections. There shall never be more than six members of any one political party or faith. When any member ceases to hold office in the Department due to death, resignation, or for any other cause whatsoever other than the expiration of a full term, the nominating authority which originally nominated that member shall nominate a successor to fill the vacancy which nominee shall be appointed by the Governor for the residue of the term."

*Paragraph* 1746, *Section 2 of Chapter 57 of the Code of* 1935, as amended, above referred to, provides for a Department of Elections for New Castle County consisting of nine members.

The majority opinion held that the constitution vested all the sovereign power of government in the Legislative, Executive and Judicial branches of the state government; that the portion of section 3 of chapter 182, of volume 46 of the Laws of Delaware, which provided for a Department of Elections for New Castle County to consist of eleven members, five of whom were to be appointed by the chairman of one of the two leading political parties, and five of whom were to be appointed by the chairman of the other of the two leading political parties, was unconstitutional because it delegated the power of appointment to a state office to an agency which was not a part of and had no connection with any branch of the state government; and that the

Legislature having failed to carry out its intention to create a Department of Elections for New Castle County consisting of eleven members, the Department of Elections of New Castle County consisting of nine members, as provided for in paragraph 1746, section 2 of chapter 57, of the Code of 1935, as amended, was the legally constituted Department of Elections for New Castle County.

A reargument was granted on the sole question of whether the opinion of the majority of the Court left the repealing clause of section 3 of Chapter 182, of Volume 46, of the Laws of Delaware, in force, or whether the Department of Elections for New Castle County consisting of nine members is restored.

The Respondents Below, Defendants in Error, contend that the repealing clause is still in force and that the Department of Elections for New Castle County consisting of nine members is no longer in existence. In support of that position they rely upon the case of Equitable Guarantee and Trust Company v. Donahoe, 3 *Penn.* 191, 49 *A.* 372, 376, decided by the Court En Banc in this State. That case holds, that where an amending act by express language repeals a certain section of an original act, and substitutes a section therefor which is later found to be unconstitutional, the section of the original act is not restored but the repeal thereof is still in force. If the facts involved in that case had been similar to the facts in the case now under consideration it is impossible to say what effect it might have had on the decision. The following language is found in the concurring opinion of Grubb, J.:

"Therefore, although the Legislature intended to amend the Act of 1897, and to continue taxation of investments, yet it clearly did not intend to amend it by continuing the distribution provisions of section 12 thereof unaltered."

We find the weight of authority to hold, that where a statute by express language repeals a former statute, and at-

tempts to provide a substitute therefor by a method which is found to be unconstitutional, that portion of the statute which provides for the repeal of said former statute is void and of no effect.

■ . The principal question to be considered in every case, is whether the portion which is repealed is severable from the rest of the statute, or whether, the Legislature intended the repeal to take effect in any event. *Annotation* 102 *A.L.R.* 802; *Mazurek v. Farmers' Mutual Fire Ins. Co.,* 320 *Pa.* 33, 181 *A.* 570, 102 *A.L.R.* 798; *State v. Rice,* 115 *Md.* 317, 80 *A.* 1026, 36 *L.R.A.* (*N. S.*) 344, *Ann. Cas.* 1913A, 1247; *State v. Benzinger,* 83 *Md.* 481, 35 *A.* 173; *State v. Thrall,* 59 *Ohio St.* 368, 52 *N.E.* 785; *Ward v Commonwealth,* 228 *Ky.* 468, 15 *S.W.2d* 276; *Randolph v. Builders' & Painters' Supply Co.,* 106 *Ala.* 501, 17 *So.* 721; *State ex rel. Law v. Blend,* 121 *Ind.* 514, 23 *N.E.* 511, 16 *Am.St.Rep.* 411; *People v. Fox,* 294 *Ill.* 263, 128 *N.E.* 505; *Chicago, R. I. & P. R. Co. v. McClanahan,* 151 *Ark.* 77, 235 *S.W.* 380; *State ex inf. Barrett v. Joyce,* 307 *Mo.* 49, 269 *S.W.* 623; *People v. De Blaay,* 137 *Mich.* 402, 100 *N.W.* 598, 4 *Ann.Cas.* 919; *In re Rafferty,* 1 *Wash.* 382, 25 *P.* 465; *State v. Candelaria,* 28 *N.M.* 573, 215 *P.* 816; *Porter v. Board of Com'rs of Kingfisher County,* 6 *Okl.* 550, 51 *P.741;* *Galveston & W. R. Co. v. Galveston,* 96 *Tex.* 520, 74 *S.W.* 537; *Barringer v. City Council of Florence,* 41 *S.C.* 501, 19 *S.E.* 745.

■ It is also well settled, that where a part of a statute found to be unconstitutional is so connected with other parts as to make them mutually dependent upon each other as conditions, considerations or compensations for each other, in such a manner as to justify the belief that the Legislature intended them as a whole, they stand or fall together. *State ex rel. Law v. Blend, supra; Mazurek v. Farmers' Mutual Fire Ins. Co., supra.*

The prevailing condition of the law on this subject is very well expressed in 50 Am.Jur., Section 521, Page 529:

"The question whether a provision in an unconstitutional statute, repealing a former law on the subject, falls with the Act of which it is a part, depends primarily upon the intention of the legislature. Ordinarily the repealing clause is not regarded as having been intended to remain in effect notwithstanding the invalidity of the remainder of the statute, and the repealing clause is accordingly itself regarded as invalid and inoperative as a repeal of the former law. This rule applies to specific repeals. A different result may be reached, however, where it appears that the legislature intended to repeal the former law in any event."

This prevailing condition is also well stated in 1 Lewis' Sutherland Statutory Construction, 2nd Ed., Section 245, Page 457:

"A repealing clause in a statute may be valid, although every other clause is unconstitutional, if such is plainly the legislative intent. But where the repeal is intended to clear the way for the operation of the Act containing the repealing clause thereby showing intention to displace the old law with the new, if the latter is unconstitutional the repealing clause would be dependent and inoperative. 'Where the evident purpose of the repeal is to displace the old law and substitute the new in its stead, the repealing section or clause, being dependent upon that purpose of substitution, necessarily falls when falls the main purpose of the Act'."

In the case of *Randolph v. Builders' and Painters' Supply Company, supra,* an Act was passed by the legislature of the State of Alabama providing for liens for mechanics and material men, and repealing certain sections of a prior Act dealing with the same subject. The Supreme Court of that State declared the later Act to be unconstitutional, and in holding the prior Act to still be in force used this language [106 Ala. 501, 17 So. 725]:

"It would, indeed, do violence to the legislative intent, to presume they intended to repeal the mechanics' lien law entirely in this state, if the legislation they were adopting, with a view

of perfecting it, and making it better, failed because of constitutional infirmity."

An examination of the provisions of Chapter 182, of Volume 46, of the Laws of Delaware, leads to the conclusion that the legislature did not intend to abolish the Department of Elections for New Castle County, but simply to increase the membership from nine members to eleven members.

Section 2 thereof repeals 1745A Section 1A of Chapter 57, of the Code of 1935, as amended, which provides for a Department of Elections for New Castle County consisting of nine members, and substitutes in lieu thereof a new section 1745A Section 1A which contains the following provisions:

"That there shall be a Department of Elections for New Castle County which shall be composed of eleven members and shall have jurisdiction over all matters and things now vested in the Department of Elections for New Castle County as now constituted, and shall possess, enjoy and exercise all and every the rights, powers and privileges which are now held, possessed, enjoyed and exercised by the Department of Elections of New Castle County, as fully and completely as the said Department of Elections now by law is authorized so to do, and such other rights, powers and privileges as by this Act conferred, and by any law of this State now or hereafter enacted not inconsistent with the provisions of this Chapter."

Section 4 thereof provides:

"All members of the Department of Elections and all employees thereof prior to the effective date of this Act, shall continue to be members and employees thereof, respectively, until the members of the Department of Elections as appointed under Section 3 hereof shall be appointed and qualified and shall have organized as such."

That the legislature did not intend to discontinue the Depart-

ment of Elections for New Castle County, by enacting Section 3 of Chapter 182, of Volume 46 of the Laws of Delaware, also appears from Section 2 of Chapter 185 of the Laws of Delaware, enacted at the same session and which became effective on April 15, 1947, the same date upon which Section 3 of Chapter 182 became effective. This additional Act which may be considered a companion act contains the following pertinent language in Section 2:

"The members of the Department of Elections for New Castle County as constituted from time to time after April 15, 1947, shall constitute from and after the effective date of this Act the Bureau of Registration for New Castle County. The president of the Department of Elections shall be the president of the Bureau of Registration. * * * The members of the Bureau of Registration shall receive no compensation for their services as such other than their compensation as members of the Department of Elections."

Certainly the Legislature did not intend to do away with the Department of Elections for New Castle County and leave the people of that County without any provision for exercising their right of franchise at subsequent general or special elections held in that County. On the contrary, the provisions of Chapter 182 of Volume 46 of the Laws of Delaware disclose the intention of the Legislature to continue in existence the Department of Elections for New Castle County but to change its membership from nine members to eleven members. The method adopted by the Legislature to bring about this change having been found to be unconstitutional, the Department of Elections for New Castle County consisting of nine members, as provided for by Paragraph 1746, Section 2 of Chapter 57, of the Revised Code of 1935, as amended, is still in existence and is the legally constituted Department of Elections for New Castle County.

We find the case of Equitable Guarantee and Trust Company v. Donahoe, *supra,* to be contrary to the weight of authority in this country and for that reason it is hereby overruled.

HARRINGTON, Chancellor:

As I view it, the determination of this case does not require any consideration of the rule stated in Equitable Guarantee and Trust Company v. Donahoe, 3 Penn. 191, 49 A. 372; but if the question is pertinent, I agree with the conclusion of the majority of the court that it was incorrectly decided.

I am, however, unable to agree with the majority conclusion that Section 3, Chapter 182, Volume 46, Laws of Delaware, violated the Constitution, and with their refusal to permit a reargument of that question.

One of the conclusions in their original opinion was that the legislature could not provide for the selection of statutory State officers by persons having no connection with the State government, and that committees of political parties were mere private corporations not within that rule. The recent cases of *Smith v. Allwright*, 321 *U.S.* 649, 64 *S.Ct.* 757, 88 *L.Ed.* 987, 151 *A.L.R.* 1110, and *Rice v. Elmore, (4Cir.)* 165 *F.2d* 387, cited by the petitioners in support of their motion for a reargument seem to have sufficient bearing on that question to require some consideration. Both involved the acts of political parties in primary elections, and in each it was argued that such committees were mere private organizations, not subject to the equal protection clause of the Federal Constitution. The contentions made were rejected.

In *Smith v. Allwright, supra,* the court said [321 U.S. 649, 64 S.Ct. 765]:

"We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the (political) party which is required to follow these legislative directions an agency of the state in so far as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party."

The principle stated in *Nixon v. Condon*, 286 *U.S.* 73, 52 *S.Ct.* 484, 76 *L.Ed.* 984, 88 *A.L.R.* 458, was, therefore, applied.

In *Rice v. Elmore, supra,* the legislature had repealed all statutory provisions relating to holding primary elections by political parties, but the court said [165 F.2d 391]:

"When these officials participate in what is a part of the state's election machinery, they are election officers of the state de facto if not de jure, and as such must observe the limitations of the Constitution. Having undertaken to perform an important function relating to the exercise of sovereignty by the people, they may not violate the fundamental principles laid down by the Constitution for its exercise."

Applying these cases to the Delaware statutory provisions set out in the earlier minority opinion, it seems reasonable to conclude that the chairmen of the executive committees of the major political parties, to whom the power to name certain statutory officers was given by Section 3, Chapter 182, Volume 46, Laws of Delaware, are in some respects State agents. If that be true, that Act would seem to be consistent with the Constitution even under the theory of the majority of the court.

TERRY, J., concurs.