PHILLIP S. JACKSON *vs.* CHELSEA HOUSING AUTHORITY.

Suffolk. February 8, 1951. — May 16, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Public Officer. Housing. Contract,* Of employment.

A contention, that a contract of employment between a housing authority and one as its executive director was invalid on the ground that he had not resigned his office as a member of the authority until after the making of the contract, had no merit where it appeared that he orally resigned as a member and such resignation was accepted on the day as of which the contract, subsequently executed, was dated and on which, at a time after such resignation, he actually began work as executive director, although he did not submit any formal written resignation as a member until more than a week after that day.

The provision of G. L. (Ter. Ed.) c. 121, § 26L, as appearing in St. 1946, c. 574, § 1, that a member of a housing authority "shall serve until the qualification of his successor," did not support a contention that a contract of employment between a housing authority and one as its executive director, made after he had resigned his office as a member of the authority and his resignation had been accepted, was invalid on the ground that at the time it was made he was still a member because his successor had not been appointed.

BILL IN EQUITY, filed in the Superior Court on February 7, 1950.

The suit was heard by *Broadhurst, J.*

*J. B. O'Hare,* (*S. G. Brown* with him,) for the defendant.

*C. C. Worth,* for the plaintiff.

COUNIHAN, J. This is a suit in equity under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, for a declaratory decree and consequential relief, where an actual controversy has arisen between the parties as to the rights of the plaintiff under a written contract dated February 21, 1949, between him and the defendant, hereinafter called the authority. By the terms of this contract the authority agreed to employ the plaintiff as its executive director for a period of four years at a salary of $4,000 a year payable weekly. The executive director was ex officio secretary of the authority. G. L. (Ter. Ed.) c. 121, § 26N, as appearing in St. 1946, c. 574, § 1. On July 8, 1949, when the plaintiff was not in default and had faithfully and competently performed his duties, he was "fired" by a majority vote of the authority. On June 12, 1950, a decree was entered that this contract was a valid and binding contract; that the authority improperly discharged the plaintiff in violation of the contract; that the authority owed the plaintiff the sum of $4,176.76 damages to June 12, 1950; and that the contract was still in force and effect. From this decree the authority appeals. The evidence is reported and the judge adopted his voluntary findings as a report of material facts. G. L. (Ter. Ed.) c. 214, § 23, as amended.

Where there is a report of material facts and the evidence is reported, we must examine the evidence and decide the case according to our judgment as to the facts, giving due weight to the findings of the judge upon conflicting evidence, which will not be overturned unless plainly wrong. *Berman* v. *Coakley,* 257 Mass. 159, 162. *Boyle* v. *Owens,* 326 Mass. 163, 165.

From an examination of the evidence and the report of material facts we find as follows: The authority was organized as a housing authority under c. 121, § 26L, as appearing

in St. 1938, c. 484, § 1, and on April 8, 1948, the plaintiff was confirmed as a member for a term of five years, c. 121, § 26L, as appearing in St. 1946, c. 574, § 1. On February 15, 1949, at a meeting of the authority, by a vote of four members, the plaintiff was appointed executive director to take effect at once. The plaintiff did not vote. The records of this meeting show that a contract was to be "drawn up immediately covering this position — upon the signing of said contract — at a minimum starting pay of $4000.00 per annum — Mr. Jackson will resign as a member of the Authority." The plaintiff was unwilling to resign until the mayor (who appointed him) assented and unless he was given a four year contract at a minimum salary of $4,000, with the approval of the chairman of the State housing board. The mayor became disturbed because of the failure of the authority to employ an executive director, and on February 21, 1949, conferred with the plaintiff and the chairman of the authority about it. The plaintiff told the mayor that he had been appointed but that he did not want to resign as a member if the mayor objected. The mayor replied that he had no objection to the plaintiff resigning and taking the new job. He said further, referring to the Chelsea Record, a local newspaper, "Why don't you and Mr. Tigar [the chairman] go down and make the announcement?" The plaintiff replied, "I'll go down and make the announcement and, of course, I'll be resigning." The plaintiff also testified that he said "if I go down there, I'm resigning from the Authority." Thereafter the plaintiff went to the newspaper and made an announcement that he had been appointed executive director. He started to work on the same day. On March 2, 1949, the plaintiff gave the authority a letter dated March 1, 1949, addressed to the plaintiff, in which the chairman of the State housing board stated that the board had no objection to the proposed contract with the plaintiff and its terms, with suggestions which were later incorporated in the contract. The minutes of a meeting of the authority on March 2, 1949, disclose that four members, Tigar, Keats, Malone and Martin, were pres-

ent and none was absent. There were also present Mr. Brown, counsel for the authority, and the plaintiff, who took no part in the meeting. It appears that the plaintiff at this meeting submitted in writing to the authority his resignation as a member, dated February 21, 1949. Reference is made in the minutes of this meeting to the vote of February 15, 1949, appointing the plaintiff executive director, and thereafter the contract in issue was signed by all the members and the plaintiff. The plaintiff was then sworn in as ex officio secretary by Mr. Brown. On March 2, 1949, the plaintiff sent the mayor a formal letter of resignation as a member. No appointment of a successor was made by the mayor until April 25, 1949, and the appointee qualified on April 27, 1949. On March 4, 1949, the plaintiff received a check for services for the weeks ending February 25, 1949, and March 4, 1949, in an amount the same as that provided by the contract. This check was signed by the chairman and treasurer of the authority with the approval of all the members. He continued to receive checks up to July 8, 1949, when the authority voted to "fire" him.

The authority argues but two points: (1) that the plaintiff continued to be a member of the authority until his successor was qualified on April 27, 1949, because of c. 121, §§ 26L, 26N, 26O, and art. II, § 8, of the by-laws of the authority adopted by virtue of c. 121, § 26P; and (2) that if this contention is not sustained, in any event the plaintiff did not resign in fact until after the contract was issued. If either contention is sustained, it asserts that the contract is invalid.

We cannot agree with the position the authority takes. In none of the sections of c. 121 relied upon is there found any express limitation upon a member of an authority accepting such a contract. It is true that art. II, § 8, of the by-laws says that no member shall be eligible to the office of executive director except as a temporary employee, but this is not applicable for reasons which we shall hereinafter point out.

Section 26L, as amended, reads in part, "Whenever the

membership of a housing authority is changed, by appointment, election, *resignation.* or removal, a certificate . . . to that effect shall promptly be so filed"[1] (with the State housing board and the State secretary). This would appear to permit a resignation either oral or written, and no provision is made in the statute for any acceptance of the same.

Here the judge expressly found that "The plaintiff told the mayor he would accept the election of February 15 if the mayor did not object to his resigning from the Authority. The mayor not only did not object but directed Chairman Tigar and the plaintiff to report at once to the local newspaper that the plaintiff had resigned from the Authority in order to become its executive director. They so reported . . . ." This is in effect a finding of an oral resignation as a member and an acceptance of it by the mayor. We cannot say upon an examination of the evidence that this finding is plainly wrong. The plaintiff did not commence work as executive director until after this had taken place when he was no longer a member. Obviously the by-law could then have no application.

Part of § 26L reads, "Every member, unless sooner removed, shall serve until the qualification of his successor." The authority contends that because of this no resignation is effective until the appointment and qualification of a successor. In *Lawrence* v. *Commissioners of Public Works*, 318 Mass. 520, a similar statute, G. L. (Ter. Ed.) c. 30, § 8, was under consideration. There the majority opinion did not specifically pass upon the point here raised but proceeded upon the theory that one who resigned was at least no longer an officer de jure. The dissenting opinion, at page 535, considered a contention similar to that urged here and rejected it. Thus this case would appear to justify a holding that after his resignation on February 21, 1949, the plaintiff was no longer a member. See *MacBrayne* v. *City Council of Lowell*, 241 Mass. 380, 385; *Kidder* v. *Mayor of Cambridge*, 304 Mass. 491, 498. We have examined the

---

[1] Emphasis supplied.

cases cited by the authority and, generally speaking, they do not present circumstances similar to those existing in the present suit. Where they do we are not disposed to follow them.

The authority further argues that, if its first contention is not sustained, in any event the plaintiff did not resign, in fact, until after his contract was executed, and that the contract is invalid because he was then still a member. What we have already said applies with equal force to this assertion. We do not agree.

In the first place, as we have already said, the judge was not plainly wrong in finding in effect an oral resignation by the plaintiff and an acceptance by the mayor on February 21, 1949. The authority itself recognized this by excluding the name of the plaintiff from members present at meetings subsequent to that date, and by approving payment to the plaintiff for services as executive director at least for the two weeks ending March 4, 1949. Furthermore, the record shows that at the meeting of March 2, 1949, the plaintiff submitted in writing to the authority his resignation before the contract was executed. The letter he sent the mayor on March 2, 1949, may be construed as a formal resignation in confirmation of the oral resignation of February 21, 1949.

There was no error in the entry of the decree. Clearly an actual controversy existed which was specifically set forth in the pleadings. A determination of the issues involved in the controversy and consequential relief were sought. The decree made binding declarations of the rights of the plaintiff and determined the amount of the consequential relief. It is to be noted that the defendant makes no argument as to the amount of consequential relief which the judge determined was owed the plaintiff by the authority.

*Decree affirmed with costs.*