164 N.J. Super. 519 (1979)
397 A.2d 362
IN THE MATTER OF THE APPLICATION FOR APPROVAL BY SHERMAN COLLEGE OF STRAIGHT CHIROPRACTIC.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1978.
Decided January 5, 1979.
*521 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Edward W. Harker argued the cause for appellants New Jersey Chiropractic Society, Frank DeSimone and Ronald E. Crescenzo, D.C. (Messrs. Platoff, Heftler, Harker & Nashel, attorneys; Messrs. Edward W. Harker and Bruce L. Nussman on the brief).
Mr. Courts Oulahan of the Washington, D.C. Bar, admitted pro hac vice, argued the cause for respondent Sherman College of Straight Chiropractic (Messrs. Friedland and Rudolph, attorneys; Mr. Michael C. Rudolph, on the brief).
Mr. Bertram P. Goltz, Jr., Deputy Attorney General, argued the cause for respondent New Jersey State Board of Medical Examiners (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
*522 The opinion of the court was delivered by MORGAN, J.A.D.
This is an appeal from the final decision of the New Jersey State Board of Medical Examiners (hereinafter the "Board") approving Sherman College of Straight Chiropractic for accreditation, thereby allowing its graduates to sit for the New Jersey chiropractic examination and, if qualified, to be licensed as chiropractors in this State. The appeal is by the New Jersey Chiropractic Society, a nonprofit corporation of the State of New Jersey, whose membership is taken from the rolls of practicing New Jersey chiropractors, Ronald E. Crescenzo, D.C., a doctor of chiropractic licensed to practice in this State (as well as a member of the Board of Medical Examiners who passed on the matter in issue) and Frank DeSimone, a citizen and taxpayer of the State of New Jersey and a chiropractic patient.
Sherman College of Straight Chiropractic is a chiropractic college located in Spartanburg, South Carolina, which had been chartered by that state on January 11, 1973. Its first class graduated in October 1976. In 1976 Sherman College applied to the Board for approval under N.J.S.A. 45:9-41.5. The Board's ultimate approval generated the present appeal.
Pursuant to statute, as will be seen, the College first submitted substantial written material supporting its application to a committee of the Board composed of one physician and two chiropractors. Without an inspection of the institution that committee recommended rejection of the application on the ground that the College's failure to receive accreditation by the national Council of Chiropractic Education (hereinafter "CCE") rendered the application at least premature, if not entirely unacceptable.
Against contentions by the College that the committee's chiropractic members were biased against the school's philosophical orientation to the practice of chiropractic, about which more later, another committee was created to inspect the institution's facilities. Following reports received from *523 the new committee, again recommending against approval of the school, the Board ultimately voted its approval.
The proceedings before the Board were informal in nature, resembling a discussion more than an adversary proceeding. Indeed, during most of the proceedings there was no adversary. No one appeared in opposition at the meetings of January 12, April 13 and May 11, 1977. It was only at the Board's meeting on October 12, 1977 that an attorney for the appellant organization appeared as a "visitor" and made a statement generally in support of the position of the two chiropractic members of the committee who had recommended rejection of the College's application.
It was after this statement that the Board, in a 6-4 vote, approved the application of Sherman College. No findings of fact were requested and none made. The only statement concerning reasons for the approval was made by Dr. Albano, president of the Board, who, in substance, found that Sherman College taught diagnosis in the chiropractic context, that is, diagnosis limited to services a chiropractor may by law provide, and that since the College met the other statutory requirements, he would recommend approval of the application.
Appellants contend that, as a matter of law, the Board was foreclosed from approving the application by reason of the negative recommendation of its statutory committee. Appellants further impugn the action of the Board by the lack of findings of fact and conclusions of law, by its alleged arbitrariness and lack of evidential support in the record for its decision and by the alleged fact that Sherman College graduates will not meet minimum educational requirements for licensure as chiropractors in this State.
Before considering these several grounds for appeal we must refer, briefly at least, to the philosophical conflict in the conception of what a chiropractor does or is permitted by law to do, that underlies so much of the controversy surrounding this matter. Two schools of chiropractic have been identified, one known as the "straight" school, adhered to by *524 Sherman College and one of the two chiropractic societies in New Jersey, and the other, known as the "mixing" school, advocated by the CCE, the chiropractic members of the Board and, of course, plaintiff organization. Perhaps the best description of each school of thought and the differences between them was given by Sherman College in a letter to the president of the Board. It reads:
The "straight" chiropractor is concerned with analyzing the spinal column for the detection and elimination of nervous system interferences known as vertebral subluxations. * * * The practice of "straight" chiropractic requires an exacting scientific spinal analysis for the location of vertebral subluxations, and the application of the most advanced techniques available for the subsequent correction of the vertebral subluxations. Medical procedures including, but not limited to, the diagnosis, prognosis and treatment of disease add nothing to "straight" chiropractic. The "straight" chiropractor has no interest, professionally or legislatively, in adding medical procedures or services to his practice.
The "mixing" chiropractor is concerned with full body (internal and external) examination, diagnosis, prognosis and treatment of disease through a wide range of procedures including, but not limited to, the following: manipulation of any and all of the articulations of the human body (bony and soft tissues); massage, manual and mechanical; physical therapy, by the natural or artificial (mechanical or electronic devises [sic]); use of heat, cold, electricity, sound waves, water; nutritional management, including dietetics, nutritional devise [sic] and nutritional supplements; general orthopedics including orthopedic braces and splints, casting, setting and casting for fractures, passive and active exercises and orthopedic manipulation of joint fixations; gynecology; otolaryngology; acupuncture and related procedures; hypnotherapy; psychological counseling; meridian therapy; and minor surgery. * * * The "mixing" chiropractor does recommend the referral of cases his diagnosis and judgement indicate he cannot treat or is legally prohibited from treating. He is also interested in expanding his professional armamentarium in order to treat an ever expanding number of disease. Regardless of the flexibility or broadness of the practice act in his particular state, the "mixer" is always legislatively active to further broaden the law to embrace his ever increasing interest in expanding his services in the field of medicine.
Fundamental to CCE's rejection of Sherman College as an accredited school of chiropractic is the school's firm adherence *525 to the "straight" conception of chiropractic. The same reason underlies the negative recommendation of the chiropractors who passed on the school as members of the Board's committee, both of whom seem to adhere to the "mixing" school of chiropractic. The medical doctor who participated in the committee found himself persuaded to his fellow committeemen's view of the limited scope of chiropractic as taught in Sherman College. Again, the reason behind the College's lack of accreditation in several other states is its strict adherence to the tenets of the "straight" school since many of those states require, as a condition to approval, accreditation by CCE, which is "mixing" oriented. Hence, many of appellants' arguments must be analyzed keeping in mind the divergent views as to the scope of chiropractic practice. When so analyzed it becomes apparent that this appeal concerns primarily an attempt by one school of thought to deny entry into the chiropractic ranks to adherents of doctrine disapproved by them. Neither doctrine, however, is recognized in the enactments regulating the field of chiropractic in this State.
All applications by schools of chiropractic are, by statute, first passed upon by a Board committee comprised of one physician and two chiropractors, the latter selected from among the chiropractic members of the Board and the two chiropractors appointed by the Governor to assist the Board in administering certain sections of the act regulating chiropractors. N.J.S.A. 45:9-41.6, the provision describing the composition of the committee, describes its duty as being "to recommend to the board with respect to approval of the aforementioned school of chiropractic." On this inadequate basis appellants urge this court to infer that the Board is bound by a negative recommendation of its committee, that it is permitted to approve any school of chiropractic only where its committee so recommends. In support of this position, appellants refer to Townsend v. Pequannock Tp., 47 N.J. Super. 294 (Law Div. 1957), and more specifically to the language therein (at 300) that regards the word "recommend" *526 as necessarily implying a favorable report and which precludes an unfavorable report. We agree with this interpretation of the word in the context of the ordinance there being construed.[1] The context in this matter, however, suggests a more expansive meaning to that word. The provision imposes upon the committee the "duty * * * to recommend to the board with respect to approval" of the applying school. Clearly, such language cannot be read to mean that the committee has a duty to report favorably on every school applying for approval. Rather, the context suggests that the word "recommend" was being used in another sense, also accepted as a meaning in current dictionary usage, namely, "to advise." See Webster's New Collegiate Dictionary (1975 ed.). Hence, so read, the provision imposes on the committee the duty to advise the Board with respect to any school making application for approval. That advice can take the form of a favorable or unfavorable report. In neither event, however, does the provision contain the slightest suggestion of any limitation on the power of the Board to act and, apart from the definition of "recommend" used in Townsend v. Pequannock Tp., supra, appellants point to none.
As we read this critical enactment, which is hardly a model of clarity, the committee, which includes those most knowledgeable of the educational requirements of chiropractic, is required to make an initial evaluation of the school's facilities and give its recommendation, favorable or unfavorable, to the Board. In considering the committee's report the Board has plenary power to act with respect to any application. Appellants' contention that the Board has power to act only with respect to an application upon which favorable *527 action is recommended by the committee lacks statutory support.[2]
Appellants' remaining contentions are best dealt with together. In substance they challenge the Board's action for lack of findings of fact and conclusions of law and contend that, in any event, the Board's decision to approve Sherman College lacks evidential support in the record, pointing specifically to certain deficiencies in the curriculum and the facilities which may preclude its graduates from complying with New Jersey licensure requirement.
The Board did not hear this matter as a "contested case" as defined in the Administrative Procedure Act, N.J.S.A. 52:14B-2(b). The provision outlining the procedure for obtaining Board approval of a school of chiropractic omits the requirement for any kind of hearing. Appellants do not even contend that a hearing is a constitutional requirement. In fact, the proceedings in this matter were not conducted as trial-type hearings, but rather as an informal exchange of ideas through most of which appellant society was not a participant. Even at the last meeting, at which counsel for appellant organization appeared as a "visitor" to make a statement, they did not seek status as a "party" to any proceeding, made no demand for a trial-type hearing, and never requested the preparation of any findings of facts or conclusions of law.
Although factual findings are desirable in any administrative proceeding even when not required by the Administrative *528 Procedure Act, see In re Environmental Protection Dep't, 139 N.J. Super. 514, 517 (App. Div. 1976), their absence is not necessarily fatal to the validity of the determination ultimately challenged. Here, the transcript of the Board meetings with the representatives of Sherman College and the attending Deputies Attorney General, and the documents submitted to the Board by the College, shed enough light on the basis for the approval granted to enable sufficient judicial review.
Appellants' contention that approval should have been denied because the Sherman College course of study can be accomplished in three rather than four years as required by N.J.S.A. 45:9-41.5 and, therefore, its graduates will be unable to qualify for licensure thereunder is without merit. That provision does not contain standards for approval of schools of chiropractic; it gives only the requirements for individual practitioner licensure. Appellants do not suggest that Sherman College requires a student to complete his or her studies in three, rather than four, years. The issue was not raised before the Board and hence the College had no opportunity to respond. In its brief, however, the College asserts that no student is required to complete the required course of study in three years, particularly when such a requirement would cause hardship. The course at the College is telescoped by holding school sessions during three-quarters of the year, thus accomplishing in three years what other schools accomplish in four. Beyond this, approval of the school does not insure admission to practice in New Jersey to all its graduates. The individuals there have to qualify pursuant to our standards in any event. We find no merit to the new argument of appellants.
Appellants next contend that the Board's action was arbitrary and capricious in that after July 1, 1979 Sherman College, not having obtained accreditation from CCE, will be precluded under South Carolina law from operating a clinic, participation in which is a requirement for licensure under New Jersey law. The fact is, however, that at the time *529 the Board approved the College and as of the date of this opinion, the College was operating a clinic in which its students participated. Any difficulty caused by Sherman's lack of CCE accreditation will arise only after July 1, 1979. The issue raised is quite obviously premature, particularly in light of the College's announced efforts to seek legislative relief in South Carolina. If and when it is determined that the College no longer provides a curriculum sufficient to enable its graduates to qualify for licensure in New Jersey, the matter can and probably will be reopened for reconsideration by the Board.
Appellants' final contention that lack of CCE accreditation precludes Board approval is best answered by noting that, unlike several other states, New Jersey has imposed no such requirement as a condition to approval. And as previously noted, lack of accreditation was based only upon Sherman College's adherence to the "straight" rather than the "mixing" conception of chiropractic practice, a distinction unmentioned in New Jersey law and, in the expertise of the Board, of no significance to the qualifications of its graduates to sit for examination in New Jersey. We cannot substitute our opinion for the expert opinion of the Board.
We are satisfied from this record that the Board's action in approving Sherman College was neither arbitrary nor capricious and had adequate support in the record of these proceedings. Accordingly, its decision is affirmed.
NOTES
[1] The pertinent portion of the ordinance being construed reads:

Upon contracts let by open competitive bidding the council shall * * * upon recommendation of the manager and the township engineer with respect to public works contracts, let the contract in the manner prescribed by law.
[2] Appellants' reliance upon Townsend v. Pequannock Tp., supra, in which the court construed N.J.S.A. 40:55-39(d) as requiring a favorable recommendation by a board of adjustment as a condition to action thereon by the municipal governing body, is inapposite. The language of that enactment clearly states that the board of adjustment is empowered only to recommend the grant of a variance and it is only on such a recommendation that the governing body is permitted to deliberate. See Rogoff v. Tufariello, 106 N.J. Super. 303, 308 (App. Div.), certif. den. 54 N.J. 583 (1969).