**Melvin J. ROSENTHAL, D. C., Plaintiff, Appellant,**

v.

**STATE BOARD OF CHIROPRACTIC EXAMINERS of the State of Delaware et al., Defendants, Appellees.**

Supreme Court of Delaware.

Submitted Feb. 15, 1980.

Decided April 1, 1980.

Stanley William Balick (argued), Wilmington, for plaintiff-appellant.

Edward F. Kafader, Deputy Atty. Gen. (argued), Wilmington, for defendants-appellees.

Before DUFFY, QUILLEN and HORSEY, JJ.

DUFFY, Justice:

This appeal challenges the constitutionality of certain statutory provisions in 24 Del.C., ch. 7, which regulates the practice of chiropractic in Delaware, and the administration of such provisions by the State Board of Chiropractic Examiners (Board).

I

The practice of chiropractic is defined by Delaware Law as follows:

"Chiropractic is the science of locating and removing any interference with the transmission of nerve energy. A license granted under the provisions of this chapter shall not entitle a licensee to use drugs, surgery, osteopathy, obstetrics, dentistry, optometry or chiropody."

1. The Association has recently changed its name to "The Delaware Association of Chiropractic/Physicians, Inc." It is referred to herein as the "Association."

24 Del.C. § 701. A three-member Board is established by § 702 and is empowered to regulate the practice of chiropractic in Delaware. Cf. §§ 706, 708.

Melvin J. Rosenthal (plaintiff), a Delaware chiropractor, filed a complaint in the Court of Chancery contesting the Board's requirement that he attend a two-day educational program sponsored by the Delaware Chiropractic Association,[1] as a condition of having his license renewed, and attacking on constitutional grounds the statutory procedure by which the Board is appointed. The parties stipulated to the facts on which the case was submitted for decision by the Trial Court. Relying on the decision of this Court in State ex rel. James v. Schorr, Del.Supr., 65 A.2d 810 (1949), the Vice Chancellor determined that the procedure by which Board members are appointed is constitutional and that the Board had not violated any of plaintiff's rights; judgment was then entered for defendants. Thereafter, plaintiff docketed this appeal.

II

As the appeal has developed in this Court, the issues differ somewhat from those presented to the Court of Chancery, and our view of the case differs accordingly.

The controversy focuses on two different philosophies or theories about the practice of chiropractic. Chiropractors have divided into two groups along such philosophical lines: the groups are known as the "straight" school and the "mixer" school.[2] The schools differ significantly in educational requirements, method of care, patient management and diagnostic techniques. The straight school, which plaintiff follows, defines chiropractic practice along the traditional lines specified in § 701, that is, as the "science of locating and removing any interference with the transmission of nerve energy." The mixer view has a "chiroprac-

2. During oral argument the Court was advised that there are twenty-nine licensed chiropractors in Delaware, twenty-seven of whom are mixer-oriented; two follow the straight theory.

tic-physician" philosophy which is defined in Board Rule 17, as follows:[3]

"Chiropractic is that branch of the healing arts which deals with the diagnosis, treatment and prevention of disease; correction and maintenance of the structural and functional integrity of the neuromusculo-skeletal system and the effects thereof or the interference therewith, by the utilization of all recognized and accepted diagnostic procedures, and the employment of all therapeutic measures as taught in approved chiropractic colleges."

The briefs discuss many of the differences between mixers and straights but, as we see the appeal, we need consider only two questions: (1) is the statutory procedure for appointing the Board valid? and (2) does the Board's educational requirement for renewal of a license comply with the governing Statute?

### A.

■ We first consider the appointing procedure, which is fixed by § 703, as follows:

"Annually the Governor shall appoint 1 member of the Board from 3 names submitted to him by the Delaware Chiropractic Association for the term of 3 years, beginning on the 15th day of June in the year of appointment. Vacancies for any cause other than expiration of term shall be filled by the Governor for the unexpired term."

Plaintiff argues that the procedure violates Article II, § 1 of the Delaware Constitution which provides in part that

"[t]he legislative power of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives."

The essence of plaintiff's claim is that § 703 requires the Governor to make appointments to the Board only from the list of names submitted by the Association and in that respect it unconstitutionally trespasses upon the gubernatorial appointment power. As we have noted, the Vice Chancellor rejected this argument, holding that the selection process was permissible under *Schorr*; he defined the applicable Delaware law in this way:

"[W]here the appointment to a regulatory Board, must, by statute, be the person designated by a private entity having no connection with government, then it amounts to an unconstitutional delegation of the legislative power. However, if [as here] the statute merely obligates the Governor to select one from among several names submitted by the same private organization, then the actual appointment is left to his discretion and thus, the choice being his, no constitutional limitation is violated."

We assume for present purposes that the Trial Judge correctly applied *Schorr* to § 703. For that reason, we are not required to test, at this time, the constitutionality of an appointing procedure approved by this Court more than thirty years ago and widely followed in Delaware statutes.[4] As we

---

3. This is not the first judicial confrontation between straights and mixers over the proper administration of the art of chiropractic. See, for example, *In the Matter of the Application for Approval of Sherman College of Straight Chiropractic*, N.J.Super. (App.Div.), 164 N.J. Super. 519, 397 A.2d 362 (1979); *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, Pa.Supr., 441 Pa. 293, 272 A.2d 478 (1971); *Gold v. South Carolina Board of Chiropractic Examiners*, S.C.Supr., 245 S.E.2d 117 (1978); *United Chiropractors of Wash., Inc. v. State*, Wash.Supr., 90 Wash.2d 1, 578 P.2d 38 (1978). As these cases show, litigation between the two schools has surfaced with some regularity in different parts of the Country.

4. Essentially the same nominating and appointing procedure is followed in filling memberships on many State Boards, including the following: State Board of Landscape Architecture, 24 *Del.C.* § 202(a); State Board of Examiners of Barbers, 24 *Del.C.* § 402(a); State Board of Dental Examiners, 24 *Del.C.* § 1102; The Board of Medical Practice, 24 *Del.C.* § 1710(c), (d) and (h); Board of Nursing, 24 *Del.C.* § 1903(b); State Board of Examiners in Optometry, 24 *Del.C.* § 2102(e); State Board of Pharmacy, 24 *Del.C.* § 2501(b); Board of Examiners of Psychologists, 24 *Del.C.* § 3502(b). And compare Board of Veterinary Medicine, 24 *Del.C.* § 3304(a), and Board of Examiners of Speech Pathology and Audiology, 24 *Del.C.* § 3707(b)(2).

see it, this controversy may be judicially determined without going beyond the chiropractors.

A side-by-side comparison is unnecessary to demonstrate that the mixer view of chiropractic, as stated in Rule 17 and as implicitly described to us, goes far beyond § 701 in describing what the practice of chiropractic is all about. Indeed, the "treatment . . . of disease," which is one function of chiropractic under Rule 17, parallels, if it does not track, the statutory definition of the practice of medicine.[5]

The case was submitted to the Court of Chancery on stipulated facts but they do not explicitly describe the philosophy of the Association. Based on what was said at oral argument, however, our understanding is that the Association generally follows the mixer view of chiropractic. In any event, the parties agree that the Association membership is composed primarily of chiropractors who represent only the mixer school and, for present purposes, that is sufficient to require a remand.

The situation as thus presented is one in which all nominees for the State governing Board are submitted to the Governor by an Association comprised primarily of chiropractors who follow a philosophy inconsistent with the statutory definition of the profession. See § 701.

In our opinion, when the General Assembly authorized the Association to recommend to the Governor persons to fill Board positions, it implicitly intended that each nominee would adhere to the statutory definition of chiropractic and that the Association would recommend only those persons committed to that definition. In other words, a nominee to the Board, made to the Governor by the Association, is expected to be a chiropractor who will follow the statutory definition of chiropractic, § 701, in the administration of the Act. In saying this, we are aware that the Medical Practices Act, to which we have referred, states that it "shall not apply to" certain licensed professions, including "chiropractors," but the exclusion is specifically limited to professions "licensed or registered according to law and acting within the scope of the activity for which they are licensed or registered." 24 Del.C. § 1703(d)(3). As applied to chiropractors, that means those acting within the scope of § 701.

Given our assumption that the appointing procedure specified in § 703 is legally permissible under *Schorr*, we do not reach the question of whether the Statute is invalid for the general reasons and under the broad principles argued by plaintiff. However, as applied, the nominating and appointing procedure may have resulted in a Board membership which is inconsistent with the regulation of the practice of chiropractic, as defined in § 701. We do not express an opinion as to that because the record is not complete on the issue. Plaintiff is entitled to an evidentiary hearing so we remand for further proceedings consistent with this ruling.

5. Compare 24 *Del.C.* § 1703, which provides in part as follows:

"(a) As used in this chapter, 'medicine' means the science of restoring or preserving health and includes medicine, surgery, osteopathic medicine and surgery, forensic medicine and all the respective branches of the foregoing.

(b) As used in this chapter, 'practice of medicine' means to:

(1) Establish an office in furtherance of the activities stated in paragraphs (2), (3) and (4) of this subsection;

(2) Investigate or diagnose or offer to investigate or diagnose any physical or mental ailment, condition or disease of any person, living or dead;

(3) Sell or give to, suggest, recommend, prescribe or direct for the use of any person, any drug, surgery, medicine, appliance or other agent, for the prevention, cure or relief of any ailment or disease of the mind or body or any symptom thereof, or for the cure or relief of any wound, fracture, bodily injury, or deformity; or

(4) Hold oneself out in any manner as engaged in the practice of medicine or to use in connection with his name, the words or letters 'Dr.,' 'Doctor,' 'M.D.,' 'D.O,' 'Healer' or any other title, word, letter or designation which may imply or designate one engaged in the practice of medicine."

### B.

 The second question tests the validity of the Board's educational requirement for renewal of plaintiff's license.

The renewal of a chiropractor's license is governed by § 710, which reads as follows:

"After an applicant has received his certificate, he shall apply yearly thereafter for a renewal certificate for which he shall pay to the Board a fee or charge of $10 before the Board shall be required to issue the certificate showing him to be qualified to practice chiropractic. Also, before the renewal certificate shall be issued, the applicant shall have attended 1 of the 2 day educational programs as conducted by the Delaware Chiropractic Association, or furnish satisfactory reason for nonattendance. This renewal fee shall apply to all practitioners."

The stipulation of facts states that in recent years the Association has not conducted an educational program and, in lieu thereof, the Board had approved individual requests for attendance at various seminars conducted under different auspices. Apparently, the Association was about to conduct an educational program and the Board denied plaintiff's request to attend a different seminar based on the straight theory. Plaintiff seeks injunctive relief which, in effect, would permit him to attend such a seminar as a basis for renewal of his license.

The question of whether *any* educational requirement may be imposed as a condition of license renewal is not before us. Nor is the mere statutory designation of the Association as the educational agency under attack by plaintiff. It is the mixer orientation of the Association which is alleged to be invalid. Indeed, the complaint charges that the Association "is essentially a spokesman for" the mixer group.

The problem here is the same as in the dispute over membership on the Board: the factual record is inadequate to permit this Court to make a determination as to whether Association "educational programs," § 710, impermissibly exceed the definition of "chiropractic" as it applies in Delaware under § 701. Plaintiff is also entitled to an evidentiary hearing on this aspect of his complaint.

On the educational issue, it is appropriate to point out that the Board has power to adopt rules and regulations in aid of its statutory duties but those "shall be without prejudice, partiality or discrimination as to the different schools of chiropractic." § 706. Any rule inconsistent therewith would be invalid.

Reversed and remanded for proceedings consistent herewith.