Governor and Council
No. 80-426

APPEAL OF THOMAS E. MURPHY
(New Hampshire Governor and Council)

November 16, 1981

*Brown & Nixon P.A.*, of Manchester, and *Tybursky & Watson*, of Portsmouth (*David L. Nixon* and *Randolph H. Reis* on the brief, and *Thomas R. Watson* orally), for Thomas E. Murphy.

*Gregory H. Smith*, attorney general (*Andrew R. Grainger*, assistant attorney general, on the brief and orally), for the State.

DOUGLAS, J.   This is an appeal under RSA 541:6 from a decision of the Governor and Council to remove Thomas E. Murphy (the defendant) from the New Hampshire Board of Chiropractic Examiners on the ground that he awarded unearned points to three applicants who took the May 1979 licensing examination. We affirm.

The New Hampshire Board of Chiropractic Examiners (the board) conducted a licensing examination on May 16 and 17, 1979. The test was composed of questions drawn randomly from a pool of questions the board members had researched and prepared. On March 15, March 22, April 5, and April 12, 1979, the board members met to discuss the contents of the examination. The board met again on April 19, 1979, and unanimously adopted the form and contents of the examination they administered in May 1979. The defendant did not object to individual questions, nor did he challenge the overall examination format.

The examination was given on May 16 and 17, 1979, and grading began on May 31. Mrs. Sharon Kimball, an employee of the secretary of state's office, read the correct answers from a master

answer sheet while the examiners checked the applicants' responses. The board members had previously agreed that credit could be awarded for answers that deviated from those given on the master answer sheet only if the board as a whole discussed the answer and decided to award credit. The defendant corrected three examinations on May 31. He continually criticized the content of the examination, yet he refused to comply with the board chairman's request that he disqualify himself from grading. Dr. Plomeritus, board chairman, then inspected one of the examinations the defendant had graded and discovered that Dr. Murphy had awarded seventy-six undeserved points, which allowed the applicant to pass three of the five sections he had actually failed. The three examinations Dr. Murphy had corrected together produced a 219-point discrepancy.

On July 12, the defendant admitted scoring the examinations so that the applicants would pass three of five sections and thus not have to retake the entire test. The board asked Dr. Murphy to resign, but he refused. Three members of the board, pursuant to RSA 4:1 (Supp. 1979), then petitioned the Governor and Council for the defendant's removal on the ground that he fraudulently and unilaterally awarded credit for incorrect answers. In March 1980, following a two-day hearing, a Master (retired Supreme Court Chief Justice Edward J. Lampron) recommended that the defendant be removed as a member of the board of chiropractic examiners. The Governor and Council approved the master's recommendation on October 1, 1980. This appeal was brought under RSA 541:6.

The defendant argues that the board tested more material than RSA 316:11 authorized it to test. On an objective level, we find that the subjects tested correspond with those listed in RSA 316:11. The underlying dispute, however, is a philosophical one that is currently dividing the chiropractic profession. The "straight" faction of chiropractors limits its practice to "locating and removing any interference with the transmission of nerve energy." *Rosenthal v. State Bd. of Chiropractic Ex.*, 413 A.2d 882, 883 (Del. 1980). The "mixers," on the other hand, diagnose and treat "disease" and use a broader range of diagnostic procedures and therapeutic measures. *Id.* at 884. The defendant, who adheres to the "straight" philosophy, argues that the "mixers," who compose three-fifths of the board, emphasized "mixer" chiropractic procedures in the examination. He contends that this was ultra vires because chiropractic science is "straight" in New Hampshire.

■■ We will not set aside an order of the Governor and Coun-

cil except for errors of law unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. RSA 541:13. The master, whose recommendation the Governor and Council adopted, refused to consider whether RSA 316:1 establishes a "straight" or "mixer" standard. He did not reach the issue because the defendant did not use the proper means to object to the examination in the first instance. We cannot conclude that the master erred as a matter of law in refusing to reach the ultra vires issue.

As the master pointed out, the defendant could have brought his concerns to the board's attention through several proper channels instead of falsifying scores. First, the defendant had ample opportunity to object to the contents of the examination prior to the time it was administered: board members discussed the examination at length in March and April 1979, and on April 19, 1979, the board voted unanimously to include all the subjects tested. The defendant participated in this vote. Second, the board had agreed that credit would be awarded for answers differing from those given on the master answer sheet only if the *entire* board, not one individual, decided to award credit. Third, questions about the legality of a proposed action could have been directed to the board's counsel in the attorney general's office. Fourth, the defendant could have sought an injunction in superior court. *See* RSA 498:2. Rather than avail himself of these procedures, the defendant unilaterally awarded undeserved points to three applicants. The master did not err in excluding evidence that the board acted ultra vires when the defendant waived several opportunities to complain. In addition, it is unclear whether the legislature intended New Hampshire to be a "straight" or a "mixer" chiropractic State. We therefore reject the defendant's argument that the board exceeded the authority granted to it by RSA 316:11.

The second issue concerns a March 3, 1980, hearing before the master. In February 1980, in preparation for his hearing, the defendant requested production of all examinations corrected by other members of the board. The board objected and a hearing was held on March 3, 1980, the day before trial was scheduled to commence. The master ordered production on March 3, and the board delivered thirty-five examinations to the defendant the same day. The defendant now claims that the other examiners also deviated substantially from the master answer sheet, but that he did not have adequate time to document these deviations because he received the examinations only one day before his hearing. Defense counsel sought to have the hearing reopened for "newly-discovered" evidence that the other examiners' grading errors

were as serious as the defendant's. The master denied this motion, ruling that the hearing was closed as to testimony but open for stipulations as to irregularities in marking and for comments on the stipulations. The defendant argues that the master's refusal to reopen the hearing denied him a fair hearing. The defendant insists that he did not grade falsely but instead graded "liberally." That is an obvious understatement. He says he understood that the master answer sheet was to be used "flexibly," in a way that allowed room for independent judgment. Thus, he asserts that the evidence he was precluded from introducing would have shown that the other board members also exercised personal judgment in grading, and that they did not adhere to the master answer sheet.

We cannot say that the master's action was unjust or unreasonable in denying the defendant's request to reopen the hearing for "newly-discovered" evidence. *See Jeannont v. N.H. Personnel Comm'n*, 118 N.H. 597, 601, 392 A.2d 1193, 1195 (1978). The defendant had one day prior to the hearing to inspect a relatively small number of examinations and thus had time to assemble evidence about grading procedure. In addition, although the master closed the record as to oral testimony, the parties were allowed to submit written stipulations about grading discrepancies. These procedures afforded the defendant an adequate opportunity to prove that it was board policy to allow use of individual discretion. In fact, the parties' stipulations disprove the defendant's argument: the defendant awarded 219 unearned points in three examinations but the other board members' combined errors total only 50-1/4 points.

The third issue the defendant raises is whether the master, in denying his motion to reopen the hearing, deprived the defendant of his right to cross-examine his accusers. Specifically, the defendant claims that he could not conduct an effective cross-examination because his review of the examinations the day prior to the hearing did not put him on notice of the extent of the other examiners' grading errors. The record reveals that, although the defendant had inspected some examinations with grading errors prior to the hearing, he did not question the board members who took the stand about these errors. Nor did the defendant call as a witness the doctor who allegedly committed one of the most serious errors. We are not satisfied by a clear preponderance of the evidence, *see* RSA 541:13, that the master's refusal to reopen the hearing was unjust or unreasonable because it deprived the defendant of the opportunity to question certain board members.

The defendant had actually chosen not to cross-examine these board members at the hearing.

■ Finally, the defendant argues that the master erred in concluding that grading errors admittedly made by other board members were not intentional and that the defendant's errors were intentional. The defendant finds evidence of intent in an eighteen-point error made by one board member, Dr. Fasulo. The defendant overlooks the fact, to which the parties stipulated, that Dr. Fasulo and the other board members gave a combined total of only 50-1/4 unwarranted points whereas the defendant gave 219 unearned points in only three examinations. The master did not err in concluding that the defendant acted intentionally and that the other board members did not act intentionally. The record clearly supports such a finding. *See Mannone v. Whaland*, 118 N.H. 86, 89, 382, A.2d 918, 920 (1978). We also agree with the master that errors by other board members might mitigate the case against the defendant but would not exonerate him.

Accordingly, we affirm the master's recommendation and the Governor and Council's decision in all respects.

*Affirmed.*

KING, C.J., did not sit; the others concurred.